HENLEY, ET AL. *v.* NU-GAS CO., INC.

[No. 1269A251. Filed August 3, 1971.]

*Judith H. Dwyer, Hayes & Dwyer,* of Washington, for appellants.

*David Waller, Allen, Fitzpatrick, Chambers & Waller,* of Washington, for appellee.

LOWDERMILK, J.—This is an action wherein the plaintiffs-appellants were a man and wife and the Vernon Fire & Casualty Insurance Company was a subrogee under a fire policy issued to their co-plaintiffs on a house trailer which was damaged by fire.

Plaintiffs-appellants Henleys purchased a mobile home about three months prior to March 3, 1967, from a mobile home sales company in Washington, Indiana. The home was equipped with a gas water heater. The orifices on the burner and pilot light of the water heater were made to burn natural gas; however, only LP, or bottled gas was available at the mobile home park where the Henleys set their trailer in Washington, Indiana, and the Nu-Gas Co., Inc., of Petersburg, Indiana, was requested to and did furnish bottled gas and was further requested to convert the unit so it would burn bottled gas.

An employee of defendant-appellee, Nu-Gas Co., Inc., changed the orifice on the burner so that it would burn the bottled gas, but the pilot light orifice needed a special kit for the conversion. Defendant-appellee's employee, Bell, notified Mr. Henley and also a Mr. Hayes, the owner of the trailer sales company, that the kit was needed and Mr. Hayes, as owner of the trailer sales company, ordered it.

Defendant-appellee drilled a hole in the orifice for the pilot light according to the instruction manual and adjusted the pilot light flame to the water heater so that it would burn slightly larger than the flame usually burned to operate the hot water heater until the conversion kit arrived.

The evidence disclosed that the flame from the pilot light

had to burn larger so as to effectively operate the shut-off control. The heat from the pilot light, besides igniting the main burner to the gas tank, heats the end of a line called a thermocouple. The heat on the end of this thermocouple causes five milliliter volts of electricity to be generated. The electricity so generated keeps a magnetic valve in the shut-off control open. If the pilot light does not heat the thermocouple the required electricity is not generated and the magnetic valve shuts off all gas to the burner and the pilot light.

The evidence was further that LP or bottled gas, burning through a natural gas orifice, does not create as hot a flame as through a bottled gas orifice and the flame must be turned up. The turning up of this flame creates a lazy flame, or a "floating" flame and not a steady blue flame, and a draft or wind permitted to come through the bottom of the trailer could cause the flame to float away from the thermocouple, and this unit would shut down.

The gas heater was first regulated for LP gas function, but went out about six times prior to a fire which burned the trailer. Plaintiff-appellant, Mr. Henley, re-lit the pilot light approximately three times and Mr. Bell from the defendant-appellee corporation serviced the heater twice in the three months, besides being there another time to install a larger gas tank.

On March 3, 1967, Mr. Bell serviced the water heater in the afternoon. The compartment housing the water heater was attached to the trailer and could be entered from an outside door only. It was through this door that plaintiff-appellant Henley and defendant-appellee Nu-Gas Co., Inc., had access to the trailer when they lighted the burner and when repair work was done.

On March 3, 1967, at the time the repairman re-lighted the water heater he could see soot on the door of the water heater that was being built up there from a leak between the heater and its door. Soot had been seen at this place before. On prior occasions, it was necessary for two of defendant-appellee's

employees to probe the soot out of the exhaust pipe which was designed to carry the fumes from the gas heater to open air.

After the pilot light was re-lighted on March 3, 1967, and the workman had left, Mr. Bell determined he had left a wrench at the trailer and after about an hour and a half, returned, opened the door and found the wrench and observed the water heater, as well as the pilot light, functioning properly.

It was after this that Mrs. Henley returned home, took a shower, using some hot water, and then at a time about three hours after Mr. Bell had last worked on the water heater the trailer caught fire.

The evidence was that the use of the water at the time it was used after the adjustment or repairs to the water heater was about an adequate time for the water heater to have had an intake of enough cold water for the water heater to automatically ignite itself.

Firemen were quickly at the scene of the blaze and they testified that most of the fire was coming up the wall between the water heater compartment and a bedroom where there was an electric fuse box for the trailer installed in the closet next to the water heater compartment, and in the fire.

The trailer was practically a total loss and the plaintiff-appellant Vernon Fire & Casualty Insurance Company, paid all of the coverage they had with the Henleys in full and were subrogated to their rights in that amount.

The complaint is brought on the theory of negligence and under the doctrine of *res ipsa loquitur*, and is in one paragraph. The issues were closed by the defendant-appellee filing answer thereto.

The trial was had to the court without a jury. The case was taken under advisement and after due consideration the judge, on July 10, 1969, found against the plaintiffs-appellants and for the defendant-appellee. Plaintiffs-appellants timely filed their motion for new trial, setting forth three specifica-

tions of error, and waived two in their brief, leaving the only specification of error that of "The decision of the court is contrary to law." The motion for new trial contained a well reasoned memorandum in support thereof, but it is not necessary that it be copied in this opinion and we shall discuss only the question raised and argued by plaintiffs-appellants.

The assignment of errors is that the court erred in overruling appellants' motion for a new trial.

A fireman witness, Mr. Embry, who was present at the fire, said he could not say the water heater started the fire.

Mr. Hayes, owner of the trailer court, stated the walls in the general area of the water heater were burned and the bathroom was gutted.

Another fireman testified that the electric fuse box was in the closet where the fire was.

Mr. Bell, a man with twenty-one years experience in the maintaining and repairing of water heaters in mobile homes, cleaned the flue from all soot, checked the pressure and orifice size and checked the pipe joints for leaks by soaping them. He cycled the heater through two cycles and found it performed correctly before he left on the day of the fire, and it was performing correctly when he returned an hour later for his wrench He was familiar with the odor of LP gas and smelled none at any time he was at the trailer.

He further testified that in his opinion neither the sooting condition nor the discolored area around the burner access door were fire hazards and he could see no way in which the water heater could have started the fire.

There was further evidence as to the fuse box in the closet adjacent to the water heater compartment. There was further evidence that the door to the water heater compartment could be entered at random by anyone who may have chosen to have opened it.

Based on the above stated evidence, it is obvious that the

evidence in the present case was not without conflict as to the water heater being the cause of the fire.

Before the doctrine of *res ipsa loquitur* applies, the injuring instrumentality had to have been in the exclusive control of Nu-Gas Company, Inc. *Evansville American Legion, etc.* v. *White* (1958), 239 Ind. 138, 154 N. E. 2d 109.

We are of the opinion that this is not a case of *res ipsa loquitur,* as the evidence shows that the automatic gas water heater was not in the exclusive control and management of the defendant-appellee, Nu-Gas Company, Inc., and it does show that the plaintiff-appellants, L. A. Henley and Charlene Henley, had access to the water heater at all times, and, in fact, the directions for lighting the same were on the water heater and Mr. Henley had, on three occasions, re-lighted the pilot light himself.

The fire broke out at a time when the trailer water heater was in the actual control of the plaintiff-appellants.

In the case of *New York, Chi., etc. R.R. Co.* v. *Henderson* (1957), 237 Ind. 456, 462, 146 N. E. 2d 531, 147 N. E. 2d 237, the court said:

> "Negligence, as any other fact or condition, may be proved by circumstantial evidence, and it has been urged that there is nothing distinctive about the doctrine of *res ipsa loquitur,* since it involves merely the permissible drawing of an inference of negligence from certain surrounding facts. This no doubt is true except that the law permits the inference of negligence to be drawn under certain sets of facts known as *res ipsa loquitur.* The basis or reasoning for this principle, in its origin at least, seemed to have been that the defendant had exclusive control over the injuring agency and the plaintiff normally had no access to any information about its control and operation. 3 Cooley on Torts (4th Ed.), Sec. 480, p. 369."

In *Evansvile American Legion etc.* v. *White, supra,* the court said:

> "The doctrine of *res ipsa loquitur* is based to a large extent upon the ground that the evidence or facts concerning

the operation of the injuring agency are within the special knowledge and control of the defendant and the injured party does not have free access to such information. [Citing cases.]"

See, also, *Prest-O-Lite Co.* v. *Skeel* (1941), 182 Ind. 593, 600, 106 N. E. 365, 368.

We are of the opinion that the only question remaining was whether there was any evidence of negligence proximately causing the injury, and believe there was not.

Plaintiffs-appellants have the following to say pertaining to the assignment of error that the decision of the court is contrary to law:

" 'If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such a verdict is contrary to law.' *Hinds* v. *McNair* (1955) 235 Ind. 34, 129 N. E. 2d 553. In order to determine whether a decision of the court is contrary to the law, only the evidence most favorable to the Appellee may be considered. *Hinds, supra.*"

With this we have no argument.

They further quote from *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669, the following:

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law."

Plaintiffs-appellants further argue that the court having determined that the evidence must be viewed in favor of the appellee, "there is one further principle which must be applied in determining whether a decision is contrary to law. The phrase contrary to law as used in the statute pertaining to grounds for a new trial, means contrary to the principles of law applicable to the particular case. *Clark* v. *Corbly* (1953), 123 Ind. App. 438, 110 N. E. 2d 309."

They next contend that the law applicable to this particular case was the doctrine of *res ipsa loquitur* and, further, that

the courts have held that the doctrine of *res ipsa loquitur* is applicable and negligence may be inferred. *Ayrshire Coal Co.* v. *Wilder* (1920), 75 Ind. App. 137, 129 N.E. 260.

The latter part of the argument we need not consider, as we have heretofore determined that the doctrine of *res ipsa loquitur* does not apply in this case.

We are of the further opinion that there is considerable conflict in the evidence; that the evidence cannot lead to but one conclusion and that reasonable men hearing the evidence of this cause could not be expected to all come to the same conclusion, and, therefore, the judgment of the court is not contrary to law, nor is it contrary to the principles of the law applicable to this case.

Finding no reversible error, the judgment of the trial court is hereby affirmed.

Sullivan, P.J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 741.