SCM CORPORATION, Appellant (Defendant Below),

v.

Robert LETTERER and Shirley Letterer, Appellees (Plaintiffs Below).

No. 3–1280A384.

Court of Appeals of Indiana, Fourth District.

April 28, 1983.

Rehearing Denied June 14, 1983.

Roland Obenchain, John B. Ford, South Bend, for appellant.

Mary E. Davis, Davis & Davis, P.C., Elkhart, for appellees.

MILLER, Judge.

Appellant-defendant SCM Corporation (SCM) is appealing from a judgment entered on a jury verdict in favor of appellees-plaintiffs Robert and Shirley Letterer, husband and wife, in the sums of $28,000 for damage to their real estate and $40,000 for damage to their personal property. The jury rendered its verdict on the basis of testimony linking a toaster-oven manufactured by SCM with a fire that substantially destroyed the Letterers' home and belong-

ings. Because the verdict was improperly premised upon the *res ipsa loquitur* rule of evidence in negligence cases, we must reverse the jury's decision. However, we also must remand this case for a new trial because the jury failed to reach any conclusion on the Letterers' strict liability charge.

## ISSUES

SCM presents us with numerous issues on review, but our resolution of the following two significant issues is dispositive of this case:

1. Whether the doctrine of *res ipsa loquitur* was inapplicable because the toaster-oven had been purchased more than two-and-a-half months preceding the fire and was in the Letterers' exclusive possession and control at the time of the fire;

2. Whether the Letterers' amendment during trial, adding a paragraph to their complaint charging strict liability in tort, should have been disallowed.

## FACTS

At noon on May 29, 1974, Mr. Letterer began to prepare his lunch at home by placing two slices of bread in a Proctor-Silex toaster-oven and then depressing the lever. The oven was purchased more than two-and-a-half months earlier by Mrs. Letterer. The toaster did not heat, whereupon Mr. Letterer discovered the electricity to the house had been shut off by the utility company. He left immediately, paid the electric bill, and returned to work. The utility company restored the electricity to the home at 12:50 P.M., and the fire department received the alarm at 1:07 P.M. The Letterers brought suit against SCM for breach of implied warranty and negligence, claiming the defective toaster-oven caused the fire.

At trial, Mr. William Servaas, an engineer for Letterers' insurer and a consultant in the field of "failures" and accident reconstructions, testified his examination of the debris in the house and the burn patterns revealed the fire originated on the kitchen counter next to the refrigerator where the toaster-oven had been located. Such testimony unequivocally contradicted the contentions of the fire department witness that the fire originated behind the stove. Servaas also experimented with a second Proctor-Silex toaster-oven which he opined operated the same as Letterers' destroyed model but had cosmetic differences. At trial and without objection, Servaas duplicated his experiments, simulating the conditions as they existed at the time of the fire by placing bread in the toaster, depressing its lever when the power was off, and then turning the power on. At that point, the demonstration revealed that the heating element "energized" for a period, shut off, then re-lighted. In Servaas's opinion, bread remaining in the toaster under such conditions would dry out and catch fire in less than 10 minutes.

At the close of all the evidence, the trial court granted Letterers' motion to amend their complaint to add a charge of strict liability. SCM was awarded a directed verdict on the warranty charge. The jury was given verdict forms on both negligence and strict liability and was instructed that, if it found for the Letterers, it was to allocate damages between realty and personalty. The jury then returned a verdict on the negligence theory against SCM which specifically found the Letterers' damages to be $28,000 regarding their real estate and $40,000 with respect to their personalty. It returned no verdict as to strict liability.

## DECISION

*Applicability of Res Ipsa Loquitur* [1]

In support of the Letterers' claim, the trial court instructed the jury on the doctrine of *res ipsa loquitur*. SCM urges *res*

---

1. The Latin phrase means "the thing speaks for itself." It came into law by way of Baron Pollock's casual comment during argument in *Byrne v. Boadle*, (1863) 2 H. & C. 722, 159 Eng.Rep. 299, a case where a barrel of flour rolled out of a warehouse window and fell on a pedestrian. W. Prosser, Law of Torts § 39, 213 (4th ed. 1971).

*ipsa loquitur* is unavailable unless the instrumentality in question was under the exclusive possession and control of the *defendant* (SCM) at the time of the injury. In this case, the evidence showed the toaster-oven was in the exclusive possession and control of the Letterers for the two-and-a-half- to three-month period immediately prior to the fire. On the other hand, the Letterers argue the *res ipsa* doctrine is applicable if a defendant had exclusive control of the instrumentality at the time of the probable negligence, although not at the time of the injury, provided the plaintiff presents evidence which tends to show the instrumentality had not been tampered with or changed after it left the defendant's control. The Letterers acknowledged regular normal use of the toaster after its purchase but denied tampering with it and testified when purchased the toaster-oven was in its packing box, sealed and intact.

However, Indiana strongly embraces the *res ipsa* doctrine only if the injuring instrumentality is within the exclusive control of the defendant at the time of injury. Thus, under the facts presented, we agree with SCM.

█ The doctrine involved is a rule of evidence whereby an inference of negligence can be drawn under certain factual circumstances. It is generally agreed there are three prerequisites to its application: "1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; 2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; 3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." W. Prosser, Law of Torts § 39, 214 (4th ed. 1971); 1 L. Frumer & M. Friedman, Products Liability § 12.03[1], 286 (1982); *Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc,* (1982) Ind.App., 437 N.E.2d 1360. The uniqueness of the *res ipsa* doctrine is the inference raised by the second factor—defendant's exclusive control—that the defendant is the culprit to the exclusion of all other causes once a particular set of facts

conforms to this tripartite formula. *Id.* With this premise, both parties here would agree; the dispute centers around the *time* at which a defendant must exert such control to incur liability.

█ In Indiana, our case law clearly requires that the defendant have exclusive control of the offending instrumentality at the time of *injury.* The failure to show such control was the basis for denying liability under the *res ipsa* doctrine when a folding chair collapsed, *Evansville American Legion Home Ass'n v. White,* (1958) 239 Ind. 138, 154 N.E.2d 109, when a water heater burned a trailer, *Henley v. Nu-Gas Co., Inc.,* (1971) 149 Ind.App. 307, 271 N.E.2d 741, and, most recently, when a sprinkler system caused water damage. *Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc., supra.* The time of the alleged negligence was not a crucial factor in these cases. Nor are we persuaded our result here should be different because the injuring agency in this case is a manufactured electrical product.

We also pay particular heed to a pertinent bit of dicta of the Wisconsin Supreme Court regarding products with moving parts that can be operated by the user. In *Ryan v. Zweck-Wollenberg Co.,* (1954) 266 Wis. 630, 64 N.W.2d 226, that court was faced with a negligence suit brought by a user who had sustained an electrical shock from a refrigerator's door handle. The court found *res ipsa* applicable because the refrigerator's operating mechanism was hermetically sealed. In reaching that conclusion, the Wisconsin court distinguished this product from those with accessible moving parts:

"Philco maintains that the principle of *res ipsa loquitur* cannot be invoked in behalf of the plaintiff to establish Philco's negligence inasmuch as the refrigerator was not within the exclusive control of Philco. If the refrigerator were a machine or appliance, such as an automobile or sewing machine, the moving parts of which are capable of being operated by the user, defendant's point would be well taken. In case of injury resulting from

the use of such a machine the inference would be just as strong that the defect causing the injury occurred as the result of the operator's use as would the inference that the same was due to some defect in manufacture, and therefore the principle of *res ipsa loquitur* would not be applicable."

*Id.* at 639, 64 N.W.2d 226.[2]  On the same plane, we find *res ipsa* inapplicable to the alleged malfunctioning of the toaster-oven here which had movable and exposed parts and which had been in the possession of and operated for several months by the Letterers.  We reach this conclusion despite the Letterers' self-serving testimony both that they had not tampered with the applicance and that its sealed packing box had not been opened prior to their purchase.

To conclude otherwise would push the *res ipsa loquitur* doctrine further and further into the battlefield of strict liability.  In fact, it has been argued that in products liability litigation *res ipsa* is a species of strict liability.  1 Frumer & Friedman, Products Liability § 12.03[8].  We are in agreement with the following language of California's Justice Traynor:

> "An injured person, . . . is not ordinarily in a position to refute [proper care on the part of a manufacturer] or identify the cause of the defect, for he can hardly be familiar with the manufacturing process as the manufacturer himself is.  In leaving it to the jury to decide whether the inference has been dispelled, regardless of the evidence against it, the negligence rule approaches the rule of strict liability.  *It is needlessly circuitous to make negligence the basis of recovery and impose what is in reality liability without negligence.*"

*Escola v. Coca-Cola Bottling Co. of Fresno,* (1944) 24 Cal.2d 453, 463, 150 P.2d 436, 441 (concurring opinion) (Emphasis added).  Our decision, therefore, does not deny the

Letterers a recovery.  Instead, it channels their proof into a more compatible action, strict liability.  As Letterers did indeed plead this in their motion to amend, we only need to resolve whether such amendment was proper.

*Addition of Strict Liability Theory at Trial*

SCM contends the trial court impermissibly allowed the Letterers to amend their complaint during trial to add a count sounding in strict liability in tort.  In overruling SCM's objections, the trial judge relied specifically on our supreme court's opinion in *Ayr-Way Stores, Inc. v. Chitwood,* (1973) 261 Ind. 86, 300 N.E.2d 335, and found SCM had failed to demonstrate prejudice as required by *Ayr-Way.*  On appeal, SCM invites us to overrule *Ayr-Way* or, alternatively, to limit it to its facts.

■ *Ayr-Way* was a products liability case originally prosecuted under breach of express warranty and negligence.  At the close of his case-in-chief, the plaintiff moved to amend his complaint by adding breach of implied warranty and strict liability.  The pleading situation is virtually indistinguishable from the case here, and we see no error where evidence admitted at trial would appear to support a strict liability pleading.  *Ayr-Way* also supports the trial court's ruling refusing SCM's motion for continuance.  That opinion instructs a continuance under these circumstances should be granted only if evidence outside the pleaded issues is admitted.  Such additional evidence should be such as to create substantial prejudice in the maintenance of the defense.  In this case, SCM neither objected to any additional evidence nor showed any other prejudice.

■ SCM also contends that, regardless of the amendment, its judgment on the evidence should have been granted on the strict liability pleading because there was

---

**2.** The *Ryan* case also intimates the length of time between a defendant's possession and the plaintiff's injury would make a difference in whether *res ipsa loquitur* would apply to products with movable parts.  *See* 1 Frumer & Friedman, Products Liability § 12.03[3], 318.

However, such additional classification unduly muddies the concept of *res ipsa loquitur* when a bright-line distinction can be easily established between products with sealed mechanisms and those with parts exposed.

no evidence in the record to show the original toaster-oven was defective. Its argument is limited to the contention that Servaas could not testify to a specific malfunction in the toaster-oven in question; however, Servaas indicated this was partly due to the appliance's burned condition and because he feared taking it apart would destroy its evidentiary value. He did *not* testify there was no defect; he merely stated under the circumstances he could discover no one specific cause. We, nonetheless, find the trial court correctly denied SCM's directed verdict on the issue of strict liability because the demonstration with the like model toaster-oven contained evidence from which a jury might infer the subject toaster-oven was indeed defective. *See Senco Products, Inc. v. Riley,* (1982) Ind. App., 434 N.E.2d 561 ("Obviously, direct evidence is not required if there is evidence from which a reasonable inference can be drawn as to a defect proximately causing the injury." *Id.* at 568, n. 11); *see also Trowbridge v. Abrasive Co.,* (3rd Cir.1951) 190 F.2d 825. In a similar situation, the Alabama Supreme Court held a cause sufficient to go to the jury where the subject grinding wheel was destroyed but experts discovered flaws in two identical wheels which underwent stress testing. *Norton Co. v. Harrelson,* (1965) 278 Ala. 85, 176 So.2d 18. In sum,

> "[t]he courts would obviously prefer, even in a strict liability case, to have proof of a specific defect causing the harm. But this is not always possible, especially in cases where the product has been destroyed due to its malfunction.

> "Most often the failure to produce the product will have a bearing only on the reliability of the circumstantial evidence of causation. If there is sufficient other evidence that harm was caused by some unspecified defect and no other cause likely, the plaintiff ordinarily has made a submissible cause."

1 Frumer & Friedman, Products Liability § 11.01[3][A], 217; *see also Remington Arms Co. v. Wilkins,* (5th Cir.1967) 387 F.2d 48.

*Miscellaneous Errors*

We also feel compelled to briefly address other issues SCM has raised in order to forestall their recurrence on retrial.[3]

■ SCM disputes the admissibility of both Letterers' original toaster-oven and the similar model. It objected to the admission of the original oven on the basis of the Letterers' failure to establish a chain of custody from the date of the fire to the day, two weeks later, when it was retrieved from a pile of debris in the Letterers' yard. SCM's failure to cite authority to support this proposition is a waiver of the issue. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Regardless, *Fruehauf Trailer Division v. Thornton,* (1977) 174 Ind.App. 1, 366 N.E.2d 21, refutes SCM's position.[4]

■ It attacks the admission of the newer like model on the basis of the following objection: "[W]e'll object to this Exhibit 30 on the ground that it has no probative value for lack of relevance and materiality to the investigation and the reaching of any pro-

---

**3.** SCM also contests the language in one of the final instructions, which language presumed the toaster-oven had been proven defective and thereby conformed to the *res ipsa* doctrine. We need not decide the accuracy of this instruction because we have already reversed the *res ipsa* theory of recovery.

**4.** SCM does not contend there is any question as to the actual identity of the toaster-oven. The Letterers offered the exhibit to establish the model of toaster-oven and not to show its defective operation. Had the latter been the case, there might have been an argument that tampering had occurred between the fire and the appliance's recovery so as to destroy the

effectiveness of any testing. Even so, the evidence would have been admissible under *Fruehauf Trailer Division v. Thornton, supra,* where this court stated:

> "Although the disputed tire, tube and flap had lain in the open while attached to Thornton's wrecked truck for approximately twenty months, Fruehauf presented no countervailing evidence either as to their degeneration or as to any tampering done to them. In the absence of indicia to the contrary, we believe further assurances from Thornton as to the authenticity of the challenged items to be unnecessary."

*Id.* 174 Ind.App. at 14–15, 366 N.E.2d at 31.

fessional opinion." Record, p. 413. Ordinarily, this objection would present us with no issue on appeal as being too general. *See O'Connor v. State,* (1980) Ind., 399 N.E.2d 364; *Indianapolis Traction & Terminal Co. v. Howard,* (1920) 190 Ind. 97, 128 N.E. 35; *Morris v. State,* (1982) Ind.App., 433 N.E.2d 74. However, this exhibit will, without doubt, be offered into evidence at any retrial, and our resolution of the issue will obviate later problems.

We first observe the second toaster-oven was introduced and admitted into evidence *after* Servaas, without objection, had both testified as to experiments with it and had utilized the same toaster-oven in an in-court demonstration. Thus, we can find no prejudice in the mere introduction of this toaster-oven when the crucial testimony of its defect was permitted without objection. In addition, for purposes of this case, the second toaster-oven was merely an example of demonstrative evidence admissible because the original had become lost or unavailable. There is authority for the proposition that, as in the case here, a substantially similar duplicate is unobjectionable. McCormick, Evidence § 213, 529 (2d ed. 1972). And generally, demonstrative exhibits are admissible in the trial court's sound discretion because "[o]rdinarily, whatever the jury may learn through the ear from descriptions given by witnesses they may learn directly through the eye from the objects described." *Hawkins v. State,* (1941) 219 Ind. 116, 128, 37 N.E.2d 79, 83–84; *accord, Thomas v. State,* (1971) 256 Ind. 309, 268 N.E.2d 609 (admission into evidence of a pistol "like" the one the defendant had was not erroneous in a prosecution for carrying a concealed weapon). In *Snyder v. State,* (1979) Ind.App., 393 N.E.2d 802, 810, this court stated it is within the sound discretion of the trial court to admit demonstrative evidence such as a diagram. Furthermore, Professor McCormick states:

"Demonstrative evidence, . . . is by no means limited to items which may properly be classed as 'real' or 'original' evidence. It is today increasingly common to encounter the offer of tangible items which are not contended themselves to have played any part in the history of the case, but which are instead tendered for the purpose of rendering other evidence more comprehensible to the trier of fact. . . . *If an article is offered for these purposes rather than as real or original evidence, its specific identity or source is generally of no significance whatever. Instead, the theory justifying admission of these exhibits requires only that the item be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact.* Whether the admission of a particular exhibit will in fact be helpful, or will instead tend to confuse or mislead the trier, is a matter commonly viewed to be within the sound discretion of the trial court." (footnotes omitted) (emphasis added.)

McCormick, Evidence § 212, 528. Turning to the facts in the present case, the second toaster-oven was admissible in the sound discretion of the trial court at least for the limited purpose of aiding the jury's understanding of the expert's testimony. While SCM may have been entitled to a limiting instruction directing the jury to consider the exhibit for this purpose only, the record reveals SCM failed to tender such an instruction. Accordingly, based on the reasoning in the foregoing authorities and the facts in this case, we conclude the trial court did not abuse its discretion in admitting the second toaster-oven into evidence.[5]

---

5. SCM also contends the court erred in admitting the expert testimony of Ross Miller with respect to the market value of the Letterers' home before the fire, immediately after the fire, and at the time of trial. SCM has made any review of this issue nearly impossible by its failure, in the *argument* section of its brief, to quote the questioned part of the testimony or any part of the record it relies upon. This is in contravention of A.R. 8.3(A)(7), and the issue is thereby waived. We additionally find it unwise to address this issue because SCM may or may not repeat certain procedural blunders in bringing this appeal, i.e. certain of its "appealed" objections to Miller's testimony were, in fact, sustained and certain others which were overruled were not presented to us for review. Not knowing exactly how such evidence will be

By reason of these arguments and our dispatch of the *res ipsa loquitur* issue, we reverse and remand.

YOUNG, P.J., and CONOVER, J., concur.

presented on retrial and what issues will or will not be preserved, we are compelled to forego any decision, at this stage of the proceedings, regarding the propriety of this witness's testimony. A similar argument is applicable to SCM's claim there was insufficient evidence in the record to support the giving of the court's final instruction on permanent and non-permanent injury to real estate or property attached thereto. We have no idea what evidence will be introduced at retrial, what objections thereto may or may not be sustained, and so forth. Thus, we do not delve into this issue. For the same reasons we do not address SCM's claim the jury's award was excessive when such award may not be repeated.