Everett D. SHULL, Sr. and Lapaloma Shull, Appellants (Plaintiffs Below),

v.

The B.F. GOODRICH COMPANY, Appellee (Defendant Below).

No. 2–1083A386.

Court of Appeals of Indiana, Second District.

May 15, 1985.

Rehearing Denied June 13, 1985.

David J. Avery, Lebamoff Law Offices, Fort Wayne, for appellants.

P. Michael Miller, Miller & Stewart, Fort Wayne, for appellee.

SULLIVAN, Judge.

A jury returned a defendant's verdict in a personal injury and loss of consortium case. Plaintiffs Everett D. Shull, Sr. and Lapaloma Shull, appeal the judgment entered thereon. They present one issue: Whether the trial court erred in refusing an instruction upon the doctrine of *res ipsa loquitur.*

In 1979 Mr. Shull, age 56, was a truck driver with a motor freight company. He was directed by his employer to the B.F. Goodrich plant in Woodburn, Indiana, to pick up a load of tires. While on Goodrich's loading dock Shull was injured when a dockplate, a mechanical device which forms a bridge between the dock and the truck trailer and upon which Shull was standing, malfunctioned, throwing Shull to the floor of his trailer. The Shulls sued Goodrich for negligence and at trial relied upon both direct proof of Goodrich's alleged negligence and the inference of that negligence under the doctrine of *res ipsa loquitur.*

At the close of the evidence Shulls tendered and the court refused the following instruction:

"There is a doctrine in law called *res ipsa loquitor,* [sic] which doctrine may come into effect under certain conditions in a negligence case. In order for the doctrine to apply, you must find that the following facts existed on May 29, 1979, the time of the occurrence in question:

First: That the plaintiff was injured as a proximate result of the occurrence;
Second: That the instrumentality causing the injury was under the exclusive control of B.F. Goodrich;
Third: That the occurrence was of a sort which usually does not occur in the absence of negligence on the part of the person in control.

If you find that the plaintiffs have established each of the three elements as stated by a preponderance of the evidence then you may infer that the defendant, B.F. Goodrich was negligent and you may consider this inference together with all the other evidence in the case in arriving at your verdict." Record at 46.

In determining whether refusal to give a tendered instruction constitutes error, we consider (1) whether the tendered instruction is a correct statement of the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions which were given. *Dahlberg, Administratrix v. Ogle* (1978) 268 Ind. 30, 373 N.E.2d 159; *Hahn v. Ford Motor Company* (1982) 2d Dist., Ind.App., 434 N.E.2d 943, 955, *trans. denied.*

### I.

The words *"res ipsa loquitur"* literally mean "the thing speaks for itself." BLACK'S LAW DICTIONARY. The doctrine is a rule of evidence allowing an inference of negligence to be drawn under certain factual circumstances. It is premised upon an assumption that in certain instances an occurrence is so unusual that, absent a reasonable justification or explanation, those persons in control of the situation should be held responsible. *Carpenter v. Campbell* (1971) 149 Ind.App. 189, 271 N.E.2d 163. While the occurrence oftentimes is "unusual" in the sense of being rare or bizarre, that is not a prerequisite to the application of the doctrine. As Dean Prosser has observed:

"There is an element of drama and of the freakish and improbable in a good many of these cases, which has led the courts on occasion to say that the event must be an 'unusual' one; but this is not at all indispensable, and very commonplace events, such as an ordinary movement of a streetcar at the wrong time will be quite enough." W. PROSSER, HANDBOOK OF THE LAW OF TORTS, § 39, p. 215 (4th Ed.1971).

The true question is whether the event was more probably occasioned by

negligence of the defendant rather than some other cause. A plaintiff relying upon a *res ipsa loquitur* may show that the event or occurrence was more probably the result of negligence by simply relying upon the basis of common sense and experience or he may present expert testimony to establish this proposition. Again Dean Prosser:

"In the usual case the basis of past experience from which the conclusion may be drawn that such events usually do not occur without negligence, is one common to the whole community, upon which the jury are simply permitted to rely. Even where such a basis of common · knowledge is lacking, however, expert testimony may provide a sufficient foundation; and by the same token it may destroy an inference which would otherwise arise. In many cases the inference to be drawn is a double one, that the accident was caused in a particular manner, and that the defendant's conduct with reference to that cause was negligent.

\*　\*　\*　\*　\*　\*

"The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that he must prove a civil case beyond a reasonable doubt. All that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause of the event than that

there was not. It is enough that the court cannot say that the jury could not reasonably come to that conclusion." Prosser, *supra* at 217–218.

In Indiana the doctrine is invoked where (1) the injuring instrumentality is shown to have been under the exclusive control of the defendant, and (2) the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care. *New York, Chicago and St. Louis Railroad Co. v. Henderson* (1957) 237 Ind. 456, 146 N.E.2d 531, *reh. denied* (1958) 237 Ind. 456, 147 N.E.2d 237; *Bituminous Fire and Marine Insurance Co. v. Culligan Fyrprotexion, Inc.* (1982) 1st Dist., Ind.App., 437 N.E.2d 1360; *Hammond v. Scot Lad Foods, Inc.* (1982) 1st Dist., Ind.App., 436 N.E.2d 362.[1]

The tendered instruction was derived from the Indiana Pattern Jury Instructions and was a correct statement of the law of *res ipsa loquitur* in Indiana. *Smith v. Insurance Co. of North America* (1980) 4th Dist., Ind.App., 411 N.E.2d 638, 639–640, n. 1.

## II.

◼ The second test, whether there was evidence to support the giving of the instruction, is in actuality a sufficiency question. Indiana cases dealing with the quantum of evidence necessary for the giving of an instruction indicate that there only need

---

**1.** The doctrine as generally applied also has the third element that the occurrence must not have been due to any voluntary action or contribution on the part of the plaintiff. Prosser, *supra*, p. 214. The purpose of this element, like the element of exclusive control, is to eliminate the plaintiff as the responsible party. Prosser, *supra*, p. 224. Indiana holds that the exclusive control element is sufficient to accomplish this purpose:

"There is no more reason for taking the permissible inference under *res ipsa loquitur* out of a case because evidence of contributory negligence is presented than there is because evidence of any explanation, or of inspection, care and maintenance is given by the defendant. Such a contrary conception would unduly restrict the fact-finding duties of a jury. "The possible existence of contributory negligence of a plaintiff does not eliminate from

the case *res ipsa loquitur* where otherwise properly applicable, nor take from the jury the privilege of drawing an inference of negligence under such facts." *New York, Chicago and St. Louis Railroad Company v. Henderson, supra,* 146 N.E.2d at 541. *See also Smith v. Insurance Co. of North America* (1980) 4th Dist., Ind.App., 411 N.E.2d 638, 641.

Just because a plaintiff may have contributed to the occurrence does not mean that the defendant was not negligent. Both issues are for the jury. Thus we are in disagreement with the Fourth District's opinion in *SCM Corporation v. Letterer* (1983) Ind.App., 448 N.E.2d 686, *trans. denied*, that Indiana requires non-contributory negligence before *res ipsa loquitur* can be applied. That opinion relied on Prosser and another Court of Appeals decision for that proposition but did not cite the opposite and clearly controlling precedent upon which we rely.

be evidence and reasonable inferences therefrom, which, when viewed in the light most favorable to the proponent, would support a jury verdict on the theory contained in the instruction. *See Sims v. Huntington* (1979) 271 Ind. 368, 393 N.E.2d 135, 139, (facts giving rise to a "possible conclusion"); *Davis v. State* (1976) 265 Ind. 476, 355 N.E.2d 836, 839–840, (some evidence that reasonable person could have believed); *Phoenix of Hartford Insurance Co. v. League, Inc.* (1973) 1st Dist., 155 Ind.App. 342, 293 N.E.2d 58, 61, ("evidence from which a jury could have found"). This standard is deliberately set at a relatively low level in order to assure the right of parties to have the trier of fact determine factual disputes thus preserving the constitutional rights to a trial by jury. IND. CONST. art. I, § 20.[2]

Whether the doctrine of *res ipsa loquitur* applies in any given negligence case is a mixed question of law and fact. *See* 65A C.J.S. *Negligence* § 220.22, pgs. 604–605 (1966); 58 AM.JUR.2d *Negligence* § 521 (1971); RESTATEMENT (SECOND) OF TORTS § 328D comment e (1965). The question of law is whether, under the evidence presented, the doctrine may apply; the factual determination is whether the permissible inference is to be drawn. When faced with a proper *res ipsa loquitur* instruction the judge's duty is to determine whether the plaintiff has produced evidence from which a jury could reasonably conclude the existence of the underlying elements of exclusive control and probability of negligence. If there is no such evidence the instruction is properly refused. On the other hand, if there is evidence from which a jury could reasonably conclude the existence of the elements, then the conditional *res ipsa* instruction, which merely tells the jury that if they do find the existence of these elements then they may draw the inference of negligence,

must be given. *Phoenix of Hartford Insurance Co. v. League, Inc.* (1973) 1st Dist., 155 Ind.App. 342, 293 N.E.2d 58.

Our view of the doctrine of *res ipsa loquitur* may seem strikingly similar to the judicial consideration of the extent of circumstantial evidence which will permit a reasonable trier of fact to infer negligence. In truth and in fact, this is precisely the case. As stated, the doctrine is a rule of evidence. More specifically it is a rule which by reason of probability permits a legitimate inference of a fact (negligence) from the proof of other facts and circumstances. It is clearly therefore a circumstantial evidence rule. *New York, Chicago and St. Louis Railroad Co. v. Henderson, supra,* 146 N.E.2d 531.

The precise issue thus becomes whether the Shulls presented evidence from which a reasonable jury could conclude that the dock-plate would not have malfunctioned in the absence of negligence on the part of the party in control and that Goodrich was the party in exclusive control. If so, then the Shulls were entitled to have the jurors instructed that if they did find those elements established by a preponderance of the evidence, they could infer that Goodrich was negligent.

## A.

### PROBABILITY OF NEGLIGENCE

When Shull arrived at Goodrich's plant he was directed to dock # 7, one of Goodrich's eighteen loading docks. Each dock is equipped with a dock-plate. The dock-plate is a mechanical device consisting of a metal plate with a sixteen to eighteen inch metal lip, both operated by a torsion spring. The dock-plate is activated by pulling a ring which releases a spring raising the dock-plate to an angle of approximately 30°.

---

**2.** This is, in essence, the same standard a trial court must use when ruling on a motion for a directed verdict under Ind.Rules of Procedure, Trial Rule 50, or a motion to correct errors under Ind.Rules of Procedure, Trial Rule 59(J)(7). For a discussion and application of the same standard in a directed verdict situation

*see American Optical v. Weidenhamer* (1983) Ind., 457 N.E.2d 181, 184, *reh. denied,* ("If opposite conclusions could, with reason, be drawn, then, it cannot be said that the evidence was insufficient."). This is so because the rules are designed to operate similarly.

Then the shipper walks the dock-plate down so that the lip is inside and rests upon the trailer bed. The plate is held in place by a ratchet device called a hold-down assembly consisting of a metal bar with serrated or grooved edges in it and into which a "pawl" or wedge fits. When in place the dock-plate serves as a bridge on which fork lift trucks and people walk back and forth between the loading area and the trailer bed.

The parties agree that the dock-plate on dock # 7 was not operating properly on the day in question. Shull testified that upon arriving he went to the loading area and attempted to activate the dock-plate by pulling the metal ring but it would not respond. James Vogel, a Goodrich employee, then arrived at the scene and was successful in activating the dock-plate. Vogel and Shull testified they had problems getting the dock-plate to stay in a locked position. The first two times Vogel activated the dock-plate, it would spring up and the two men walked it down. On each of these first two attempts the dock-plate would not stay down but instead would "pop up" a couple of inches. The two men attempted the same process a third time and both testified that after they walked the dock-plate down it appeared locked. Vogel walked to his fork truck and Shull walked into the trailer. While Shull was on the lip of the dock-plate, the plate suddenly released to its fully elevated position throwing Shull to the floor of his trailer.

Neither party disputed that dock-plate failure is a rare event. There was evidence that after the accident Goodrich's maintenance department looked at the dock-plate but no specific cause of the malfunction was introduced into evidence. Shull argues that dock-plates don't normally fail without negligence on the part of the person responsible for maintaining them. In argu-

ing for a directed verdict, Goodrich contended that the reason for this malfunction was not produced by Shull and that negligence could not be inferred from the mere fact of the malfunction. The Shulls argued *res ipsa loquitur,* and the judge, in denying the motion, held the evidence sufficient to avoid a directed verdict.

Generally, *res ipsa loquitur* would allow the jury to attribute Shull's injury under unexplained circumstances to Goodrich's negligence based upon evidence from which a reasonable person may conclude it is more likely than not that the accident was caused by Goodrich's negligence. This requirement necessitates a reasonable showing that the accident was indeed one which would not ordinarily occur in the absence of proper care on the part of those who manage or maintain the instrumentality causing injury.

This inference of negligence as a component of *res ipsa* may be based upon common knowledge and/or the testimony of experts or other witnesses. Jack Ringler, Goodrich's engineer and head of maintenance, testified that under normal circumstances the dock-plates remained secured until the trailer pulled away or the ring was pulled down to release the hold-down assembly. On the occasion in question, however, the trailer was stationary and the ring had not been pulled. Nonetheless, according to the testimony of the Goodrich employee assisting Shull, the dock-plate raised as though the ring had been pulled.

■ The unexplained malfunction of machinery is ordinarily attributable to a defect and/or improper maintenance. Where responsibility for the defect may be attributed to the defendant, negligence may be inferred. *See e.g., Chiuccariello v. Campbell,* 210 Mass. 532, 96 N.E. 1101 (1912).[3]

---

**3.** In *Chiuccariello,* a jury was entitled to find the employer negligent based upon application of *res ipsa* where an employee was injured when a machine started without apparent cause:

"[I]n most cases of the unexplained starting of a machine, in which an action has been maintained for injuries thereby caused, there has been some further evidence of negligence

on the part of the employer, either by evidence of previous instances of such starting, or of other trouble in operation, that were or ought to have been known to him, or that it was old, worn-out, secondhand, or otherwise in need of more inspection or repairs than it had received, or that it was improperly set up or adjusted, or that recent repairs had left it

In the instant case, Goodrich admitted that the dock-plates were serviced only after trouble arose. Ringler, also specifically testified that Goodrich had experienced previous malfunctions with the dock-plates caused by a problem or defect in the ratchet device. He further testified, given Shull's report of the manner in which the malfunction occurred, that, in his opinion, the mechanism was faulty and should be replaced. This is evidence from which it might be reasonably concluded that it was more likely than not that the accident would not have ordinarily occurred in the absence of Goodrich's negligence.

Shull, however, did not rely solely upon a general allegation of negligence as the cause of the malfunction. His specific theory of the case was that the dock-plate malfunctioned because Goodrich failed to use proper care and maintenance. He opined that a lack of inspection and maintenance of the dock-plates led to a build-up of dirt and debris on the serrated edges of the hold-down assembly preventing it from locking and thus resulting in the malfunction. In support of this theory, Shull introduced the manufacturer's manual which represents that "With proper care and maintenance your Kelley Adjust-A-Lip Dockboard will give many years of satisfactory, trouble-free service." Record at 295. The maintenance manual instructs the owner to "[c]heck the hold-down assembly periodically for foreign material which may keep the mechanism from locking. Flush with solvent to clear." Record at 295. The manual also instructs the owner to "Periodically clean the [dockplate] pit of dirt and debris which collect during normal use." Record at 295. On cross-examination, Ringler testified that the maintenance plan set out in the manufacturer's manual, specifically to check the hold-down assembly periodically for foreign materials and flush with solvent, was to prevent build-up

on the serrated edges of the hold-down assembly which, if present, "would probably" keep the hold-down assembly from locking in place. Shull argued that in the normal course of things in a loading dock, dust, dirt and debris would accumulate and that was why the manufacturer suggested the preventive maintenance plan. Ringler also testified that even though such periodic maintenance "could perhaps prevent a failure," Goodrich would not follow the manufacturer's suggested preventive maintenance program but instead would wait until the dock-plates broke down before performing any work on them. He explained that this was so because there were eighteen dock-plates and the temporary loss of one would not disrupt production. Ringler testified that when dock-plates did malfunction his experience was that it was because something was wrong with the ratchet device in the hold-down assembly. Ringler did not, however, identify the specific causes and solutions of such ratchet device failure and admitted that Goodrich kept no such records.

Goodrich did present evidence which conflicted with Shull's theory and evidence. James Shively, a Goodrich mechanic testified that, on his own initiative, he "tried once a month to go down through them, [the eighteen dockplates] inspect them, look at them, lift them up." Record at 268. Shively also testified that he had never experienced a dock-plate failing to stay down because of an accumulation of grease and debris on the ratchet device. Goodrich also presented evidence that the dock-plates were designed to have a couple of inches of movement in them and opined that this is all that happened. Goodrich further presented evidence that periodic inspection would not prevent all dock-plate failures and that its shipping dock had very little accumulation of dust. Finally Good-

in bad condition, or otherwise ... [Y]et in others the employer was held liable by reason merely of the unexplained starting .... [I]f [the instrumentality did start suddenly from a position of rest when it had been properly stopped, that could be taken to show not only that there was some defective condition, but

also that there was negligence in connection with that defective condition."
*Id.,* 96 N.E. at 1102 (citations omitted). *Accord e.g., Rose v. Port of New York Authority,* 61 N.J. 129, 293 A.2d 371 (1972) (premature closing of automatic doors strongly suggests a malfunction which in turn suggests neglect).

rich produced several witnesses who stated that the type of incident which Shull and Vogel testified to, where the dock-plate is in an apparently locked position and then suddenly releases to a fully elevated position, had never happened before or after the accident.

It is axiomatic that resolving such conflicts in the evidence and judging the credibility of witnesses is for the trier of fact. While Shull's evidence and theory may not have been compelling, it clearly was sufficient to sustain a jury's finding that this dock-plate would not have malfunctioned in the ordinary course of things if those who controlled it had used proper care.

## B.

### EXCLUSIVE CONTROL

The evidence which tends to support the conclusion that Goodrich was in exclusive control of the dock-plate must be viewed in light of the definition of "exclusive control" in the law of *res ipsa loquitur*. As stated, the doctrine of *res ipsa loquitur* is an evidentiary rule.

█ It is not necessary that defendant be in control of the causative instrumentality at the moment of injury so long as defendant was the last person in control of the instrumentality under circumstances permitting an inference of negligence. Dean Prosser explained that:

> "[exclusive control] of course does serve effectively to focus any negligence upon the defendant; but the strict and literal application of the formula has led some courts to ridiculous conclusions, requiring that the defendant be in possession at the time of the plaintiff's injury .... Of course this is wrong: it loses sight of the real purpose of the reasoning process in an attempt to reduce it to a fixed, mechanical and rigid rule. 'Control,' if it is not to be pernicious and misleading, must be a flexible term."

W. PROSSER, HANDBOOK OF THE LAW OF TORTS, § 39, p. 220 (4th Ed. 1971). In keeping with this concept courts must look to the defendant's right to con-

trol, and opportunity to exercise it. In some situations "control" is simply the wrong word and the courts should determine whether the evidence reasonably eliminates explanations other than the defendant's negligence. As noted by Prosser:

> "The plaintiff is not required to eliminate *with certainty all* other possible causes and inferences, which would mean that he must prove a civil case beyond a reasonable doubt .... The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, *or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed.*" Prosser, *supra* at 218. (Emphasis supplied)

Notwithstanding *Evansville American Legion Home Assn. v. White* (1958) 239 Ind. 138, 154 N.E.2d 109, we do not view Indiana case law as contrary to our holding. In *Evansville American Legion*, relied upon by Goodrich, the injuring instrumentality, a chair, was in the actual physical control of the plaintiff when it collapsed. The circumstances in that case were not such that negligence, if any, could reasonably be attributed to the defendant. There was evidence only that a rivet connecting the legs had recently sheared off. Our Supreme Court did not emphasize the control element nor did it determine that negligence on the part of defendant was more probable than negligence on the part of any other person. The Court placed primary emphasis for its holding that *res ipsa loquitur* was inapplicable, upon the premise that the doctrine is based upon the availability to defendant, but not to plaintiff of evidence explaining the occurrence. It is worth of note that Judge Arterburn, in authoring the *Evansville American Legion* majority decision did not retreat from his earlier pronouncements for the majority in *New York, Chicago and St. Louis Railroad Co. v. Henderson, supra,* 146 N.E.2d 531. In the *Henderson* decision, relied upon by the Shulls, the court also examined the interrelationship of exclusive control and superior knowledge of the facts hold-

ing that the concepts are but tools for the implementation of the doctrine. Judge Arterburn, speaking for the majority, stated:

"In this connection it is argued that if there exists a question of contributory negligence for the jury to determine, such a possibility of contributory negligence would exclude the doctrine of *res ipsa loquitur*, because under the principle, the injuring instrument must be under the exclusive control of the defendant, with no opportunity for the plaintiff's conduct to contribute, influence, or cooperate with the factors which caused the injury. We can find no sound authority for such a limitation on the principle. It is true the doctrine as generally stated is operative where the factors causing the injury are within the control and knowledge of the defendant. This statement, so frequently made in defining the doctrine, appears to rest merely upon a rationalization of the principle sometimes stated in another way, namely that if the plaintiff normally has no access to the information and details about the operation and control of the thing which caused the injury, then the plaintiff is not obligated to attempt to plead or prove the exact details of the alleged failure or improper operation. The law then *permits* the drawing of an inference of defendant's negligence." 146 N.E.2d 540–541.

We accordingly conclude, as does Dean Prosser, that the accessibility of evidence is at best merely a "make weight" argument, or a corollary to the application of *res ipsa loquitur*. It is not the basis for the rule. Prosser, *supra*, § 39, p. 225.

Goodrich relies heavily upon *SCM Corp. v. Letterer* (1983) 4th Dist., Ind.App., 448 N.E.2d 686, to support its contention that Shull's contribution demonstrated that Goodrich was not in exclusive control of the injuring instrumentality and that, therefore, *res ipsa loquitur* is inapplicable. Goodrich is correct that in reversing a jury verdict for plaintiff, our Fourth District stated that *res ipsa loquitur* requires the defendant to have exclusive control of the instrumentality at the time of the injury. That decision and its cited authority, however, did not elevate the requirement to a *per se* rule. Instead, the *SCM* court and the authorities cited looked to the surrounding circumstances and whether the plaintiff excluded other reasonable causes.

In *SCM, supra*, the electricity to the plaintiff's home had been shut off. During plaintiff's absence power was resumed. A piece of toast had been earlier placed in a toaster-oven and the toaster-oven left in an operational mode. According to an engineer, the sudden resurge of energy caused the toast to burn which caused the toaster-oven and the house in turn to ignite. Plaintiffs relied upon *res ipsa loquitur* against the defendant-manufacturer of the toaster-oven. Noting the length of time the plaintiffs had owned the toaster, the exposed nature of the toaster's moving parts, and the court's unwillingness to permit *res ipsa loquitur* to invade the territory of strict liability in tort, the court held *res ipsa loquitur* inapplicable "*under the facts presented.*" 448 N.E.2d at 689. (Emphasis supplied)

The cases upon which *SCM* relied did not focus solely upon the defendant's exclusive control at the time of the injury. For example, in *Henley v. Nu-Gas Co.* (1971) 149 Ind.App. 307, 271 N.E.2d 741, the court held that *res ipsa loquitur* was inapplicable to hold the defendant liable for a water tank explosion where the plaintiffs had, in fact, frequently relighted the heater's pilot light themselves after the defendant-repairman had relinquished control. In *Bituminous Fire and Marine Insurance Co. v. Culligan Fyrprotexion, Inc., supra*, 437 N.E.2d 1360, the court rejected *res ipsa loquitur* where no evidence was presented with respect to how a pipe "T" fitting broke and where any number of persons besides the plaintiff and the defendant could have damaged the "T" fitting while the building was under construction. The building in *Bituminous* was subject to multiple control prior to the injury. The court, therefore, although noting the exclusive control requirement, rested its decision

upon the plaintiff's failure to exclude the reasonable possibility of other causes.

Each of these cases rested upon the likelihood of other persons having caused the accident in question. The opinion in *SCM* viewed as persuasive the likelihood that the plaintiff or someone else had misused the toaster-oven prior to the accident in question. In *Henley, supra,* the plaintiffs had examined and used the pilot light themselves, and in *Bituminous, supra,* the plaintiffs failed to exclude the likelihood that the many other subcontractors had caused the pipe to break.

The case before us is not unlike *Phoenix of Hartford Ins. Co. v. League, Inc.* (1973) 1st Dist., 155 Ind.App. 342, 293 N.E.2d 58. In *Phoenix,* the court reversed a refusal to instruct on *res ipsa loquitur* where, under the facts the jury could have reasonably found that the defendant's use of an acetylene torch started a fire which was not discovered while defendant was in exclusive control of the premises, but some 7½ hours later.

Suffice it to say that "exclusive control" is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it. Prosser, *supra,* p. 220. Exclusive control is satisfied if the defendant had control at the time of the alleged negligence.

■ The Shulls argue that the most probable cause of the dock-plate malfunction was a negligent lack of maintenance and that Goodrich was in exclusive control of the dock-plate at all times for maintenance purposes. That such argument focuses upon particularized negligence in view of the available evidence, does not diminish or otherwise affect the applicability of *res ipsa* in its more generalized sense.

The evidence which tends to support exclusive control in Goodrich is that Goodrich was the sole occupant of the factory since it was built in 1961. In 1968 the dock-plates were installed and, at all times thereafter, Goodrich performed all maintenance upon them. Goodrich employees were used for the purpose and no independent contractors were employed. Clearly if the jury were to believe that the dock-plate would not have malfunctioned but for an act or omission constituting negligence, there was sufficient evidence for them to conclude that Goodrich was in exclusive control of the dock-plates at the time the negligent acts would have occurred. Goodrich's contention that Shull was in joint control of the dock-plate at the time of injury is actually an argument that Shull was contributorily negligent and incurred the risk. These issues were properly before the jury and Goodrich was entitled to and did receive jury instructions on both contributory negligence and incurred risk. These issues, however, do not remove *res ipsa loquitur* from the case where it is otherwise applicable. *New York, Chicago and St. Louis Railroad Co. v. Henderson, supra; Smith v. Insurance Co. of North America, supra.*

Under the circumstances before us we hold that it was error for the trial court to determine, as a matter of law, that an inference of Goodrich's negligence was impermissible.

### III.

The third factor to be considered in determining whether an instruction was properly refused is whether the substance of the tendered instruction was covered by other instructions which were given. The doctrine of *res ipsa loquitur* is a very particularized theory in the law of negligence and was not covered by the trial court's other instructions.

Because Shull's tendered instruction on the doctrine of *res ipsa loquitur* correctly stated the law, was supported by sufficient evidence and was not covered by other instructions, it was error for the trial court to refuse it. We do not know what the jury's verdict would have been had they been properly instructed, therefore, we reverse the judgment and remand this case for a new trial.

BUCHANAN, C.J., and SHIELDS, J., concur.