**K-MART CORPORATION,**
Defendant–Appellant,

v.

**Floyd GIPSON and Frances Gipson,**
Plaintiffs–Appellees.

No. 41A01–9001–CV–37.*

Court of Appeals of Indiana,
First District.

Dec. 13, 1990.

Michael V. Gooch, Edward R. Hannon, Harrison & Moberly, Indianapolis, for defendant-appellant.

John R. Helm, Schreckengast, Lovern & Helm, Indianapolis, for plaintiffs-appellees.

BAKER, Judge.

Defendant-appellant, K–Mart Corporation (K–Mart), brings this appeal challenging a $275,000 jury verdict entered in favor of plaintiff-appellees, Frances and Floyd Gipson (the Gipsons). The Gipsons sued K–Mart for personal injuries Frances suffered in an incident involving a falling display rack at a K–Mart store. K–Mart raises four issues for our review which are:

I. Whether the trial court erred in giving the jury an instruction concerning the doctrine of *res ipsa loquitur*.

II. Whether the trial court erred in denying its motion for judgment on the evidence.

III. Whether the trial court erred in instructing the jury concerning future medical expenses.

IV. Whether the trial court erred in sending a copy of the final instructions to the jury room for their use during deliberations.

We find no error in the trial court's actions and, therefore, affirm the judgment.

## FACTS

On Thursday, May 9, 1985, Mrs. Gipson and her friend, Mary Miller, went to a K–Mart store to return an item Mrs. Gipson purchased earlier that week. While at the store, Mrs. Gipson was injured when a display rack made of heavy metal wire and containing several wind chimes fell on her.

At the close of the evidence, the Gipsons tendered the following instruction on the doctrine of *res ipsa loquitur* which the court read to the jury:

In this case, if you find that:

1. The plaintiff was injured as a proximate result of the falling display rack;

2. That the display rack was under the exclusive control of the defendant, or its agents, and;

3. That the falling display rack was of such a nature that it usually would not occur in the absence of negligence on the part of the defendant or the defendant's agents; then you may infer that

the defendant was negligent, and you may consider this inference, together with all the other evidence in the case, in arriving at your verdict.[1]

*Record* at 44.

## DISCUSSION AND DECISION

### I and II.

■ K–Mart asserts the trial court erred in instructing the jury concerning the doctrine of *res ipsa loquitur* and in denying its motion for judgment on the evidence. K–Mart predicates both of these contentions on the allegation that the Gipsons failed to present sufficient evidence of negligence to send the case to the jury.[2] Because the two issues concern the sufficiency of the Gipsons' case, we will discuss them together.

■ When reviewing jury instructions, this court considers whether the instruction correctly states the law, whether the evidence supports giving the instruction, and whether the substance of the instruction is covered by other instructions which were given. *Evans v. Schenk Cattle Co.* (1990), Ind.App., 558 N.E.2d 892. K–Mart focuses its argument on whether the evidence supported giving the *res ipsa loquitur* instruction.

■ The doctrine of *res ipsa loquitur* is a rule of evidence that allows a jury to draw an inference of negligence under certain factual circumstances. *Brinegar v. Robertson Corp.* (1990), Ind.App., 550 N.E.2d 812, *trans. denied.* The doctrine operates on the premise that negligence,

like any other fact or condition, may be proved by circumstantial evidence. *New York, Chicago & St. Louis R.R. Co. v. Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531. Although negligence may not be inferred from the mere fact an injury occurred, it may be inferred from the circumstances surrounding the injury. *Haidri v. Egolf* (1982), Ind.App., 430 N.E.2d 429; S. SPEISER, THE NEGLIGENCE CASE— RES IPSA LOQUITUR § 1:1 (1972).

■ The central question involved in the use of the *res ipsa loquitur* doctrine is whether the incident more probably resulted from the defendant's negligence rather than from some other cause. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924, *trans. denied.* The doctrine may be applied when the plaintiff establishes: 1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants; and, 2) the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care.[3] *Henderson, supra; Hammond supra.* A plaintiff seeking to invoke the *res ipsa loquitur* doctrine may establish that the incident was more probably the result of negligence by relying on common sense and experience. *Shull, supra.* Once a plaintiff presents sufficient evidence to bring himself within the purview of the doctrine, the defendant is given the burden of going forward with evidence to explain the accident; but, the burden of proof does not shift. *Bituminous Fire, supra; Hammond, supra.*

---

1. The instruction is an adaptation of Indiana Pattern Jury Instruction 7.13.

2. K–Mart appears to raise in its brief an additional allegation of error in another instruction the trial court gave the jury. K–Mart, however, failed to comply with Ind. Appellate Rule 8.3(A)(7) requiring that the instruction and any objection made be set out verbatim in the argument section of the brief. Thus, K–Mart fails to preserve any alleged error in the trial court's instruction. *Austin v. Thrapp* (1983), Ind.App., 444 N.E.2d 867.

3. Some of our case law indicates that the absence of plaintiff's negligence is a necessary element of the *res ipsa loquitur* doctrine. *See,*

*e.g., Brinegar, supra; SCM Corp. v. Letterer* (1983), Ind.App., 448 N.E.2d 686. Other Indiana cases do not mention the absence of plaintiff's negligence as a factor. *Henderson, supra; Shull, supra; Hammond v. Scot Lad Foods, Inc.* (1982), Ind.App., 436 N.E.2d 362; *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.* (1982), Ind.App., 437 N.E.2d 1360. The advent of comparative fault in Indiana removed the barrier to recovery in cases where plaintiff's negligence contributed to the injury. Accordingly, unless the plaintiff was more than 50% at fault in the incident, his negligence will not prevent the application of *res ipsa loquitur. See* PROSSER & KEETON, LAW OF TORTS § 39, at 254 (5th ed. 1984); *see also* IND. CODE 34–4–33–1 to –13.

When presented with a request for a *res ipsa loquitur* instruction, a trial judge's duty is:

to determine whether the plaintiff has produced evidence from which a jury could reasonably conclude the existence of the underlying elements of exclusive control and probability of negligence. If there is no such evidence the instruction is properly refused. On the other hand, if there is evidence from which a jury could reasonably conclude the existence of the elements, then the conditional *res ipsa* instruction, which merely tells the jury that if they do find the existence of these elements then they may draw the inference of negligence, must be given.

*Shull, supra* at 928. The precise issue here, then, is whether the Gipsons presented evidence from which a reasonable jury could conclude that the display rack would not have fallen in the absence of negligence on the part of the party in control of the rack and that K–Mart was the party in exclusive control of the rack. If the Gipsons presented sufficient evidence on the above two elements, then they were entitled to have the jury instructed that if it found those elements were established by a preponderance of the evidence, it could infer that K–Mart was negligent.

### Probability of Negligence

■ The Gipsons presented the following evidence concerning the incident. The rack that fell on Mrs. Gipson was made of heavy metal wire, was affixed by small hooks to standards, and stood approximately 7 feet off the ground. The rack was installed by a K–Mart employee. Immediately preceding the fall of the rack, Mrs. Gipson approached the rack and lightly touched the "clangers" on two of the wind chimes. Mrs. Gipson did not touch the rack itself. She turned and took a few steps away from the display, decided to purchase one of the chimes, and turned and took a few steps back toward the display. As she moved back toward the display, the rack containing the chimes fell on her and knocked her off her feet.

There were no other customers near the display when the rack fell on Mrs. Gipson. Mary Miller testified at trial that the rack simply toppled over for no apparent reason. There were no warning signs around the rack to discourage customers from touching either the wind chimes or the rack. After the incident, an unidentified person who appeared to Mrs. Gipson to be a stock boy said, "Well look, this whole thing broke." *Record* at 95. Ronald Klinger, the manager who was called to the incident, told the stock boy to "Get it out of here, get it cleaned up and get it out of here." *Record* at 95. The Gipsons presented Klinger's depositional testimony at trial. Klinger claimed to have no knowledge of who cleaned up the display rack after the incident, of whether K–Mart still had the rack, of the names of any K–Mart employees who knew anything about the falling rack, of whether the rack was inspected after installation, and of anyone who knew whether the rack was inspected. Klinger also had no knowledge of how the rack fell, although he admitted he looked at the rack after it fell. K–Mart did not present any evidence to explain the cause of the accident.

The Gipsons maintain that display racks do not ordinarily fall in the absence of someone's negligence and we have to agree. While the evidence presented by the Gipsons may not be compelling, it was enough for a reasonable juror to infer negligence. In establishing the probability of negligence element of *res ipsa loquitur*, a plaintiff may rely on common sense and experience. *Shull, supra.* As a matter of common sense and experience, display racks do not ordinarily fall for no apparent reason on customers in stores.[4] The rack

---

4. K–Mart directs our attention to several cases from foreign jurisdictions where *res ipsa loquitur* was not applied. *See, e.g., Neis v. National Super Markets, Inc.* (1982), Mo.App., 631 S.W.2d 690 (can fell from the top of an open shelf containing a stack of canned goods); *Ruml v. Giant Food, Inc.* (1972), D.C.App., 290 A.2d 571 (soft drink bottle fell from a stacked display of soft drink bottle cartons); *Biaggi v. Giant Food Shopping Center* (1957), D.C.Cir., 244 F.2d 786 (box of tissues fell from shelves); *Pilie v. National Food Stores of Louisiana, Inc.* (1963), 245

was installed by a K–Mart employee and there was no evidence presented that a third party may have tampered with the rack. It is reasonable to infer that negligence for a falling instrumentality is attributable to that party who was responsible for installing and maintaining the instrumentality. K–Mart was the party who was responsible for installing and maintaining the rack, and the jury could reasonably infer that it was negligent in the rack's fall.

### Exclusive Control

K–Mart argues the Gipsons failed to establish it exercised exclusive control over the display rack mainly because the Gipsons did not eliminate other causes for the rack's fall. K–Mart submits there was evidence that the display may have been broken prior to the fall and K–Mart may not have known of the break or caused the break. K–Mart also argues the Gipsons were not entitled to the *res ipsa loquitur* instruction because they did not eliminate the possibility that another customer may have "had access to, handled, tampered with, perhaps bumped with carts or otherwise caused a dislodging of the display." *Appellant's Brief* at 12. In response to these arguments, we direct K–Mart's attention to *Merriman v. Kraft* (1969), 253 Ind. 58, 249 N.E.2d 485, in which the Indiana Supreme Court stated:

> To assert the doctrine of *res ipsa loquitur* it is not necessary to prove that the *only* cause of the accident was defendant's negligence. To the contrary it is said:
>
>> "the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in the light of ordinary experience *it would probably* not have happened if those who had the management or control of the causative instrument had exercised proper care."
>
> 21 I.L.E., Negligence, § 163, p. 401.

It is therefore not necessary for a plaintiff to exclude every other possibility other than the defendant's negligence as a cause. This principle has been recognized in Indiana.

> "There is no reason in law why a plaintiff may not offer such evidence as may be available tending to show specifically the items of negligence and still rely upon the inference also permitted under *res ipsa loquitur.* A number of different causes or inferences may be thus left to the final determination of the triers of the facts." *New York, Chicago, etc., R.R. Co. v. Henderson* (1957), 237 Ind. 456, 470, 146 N.E.2d 531, 539, 147 N.E.2d 237; *Seneris v. Haas* (1955), 45 Cal.2d 811, 291 P.2d 915, 53 A.L.R.2d 124.

*Id.,* 253 Ind. at 61–62, 249 N.E.2d at 487 (emphasis in original). While the possible causes asserted by K–Mart may have been legitimate inferences to be drawn, they do not prevent the application of the *res ipsa loquitur* doctrine. All inferences from the evidence, including those arising from the *res ipsa loquitur* doctrine, are to be placed in the scales to be weighed by the trier of fact. On appeal we will not reweigh those inferences to achieve a different result.

We must also note K–Mart's mention of the fact that the Gipsons presented no evidence of the cause of the rack's fall. This begs the question. The doctrine of *res ipsa loquitur* is designed to allow an inference of negligence to be drawn when evidence of causation is lacking. The Gipsons had the burden to present evidence of the circumstances surrounding the incident. Under the *res ipsa loquitur* doctrine, K–Mart then had the burden of persuasion to present evidence to explain the accident. *Bituminous Fire, supra; Hammond, supra.* K–Mart did not attempt to present any evidence of its own actions which would establish its exercise of due care in the incident. The Gipsons' failure to present evidence of causation does not preclude the application of *res ipsa loquitur* to the facts of this case.

La. 276, 158 So.2d 162. In virtually all the cases K–Mart cites, the falling instrumentality was a product of some sort and not a display apparat-

us. We find those cases are inapplicable to the case at bar.

It is axiomatic that since there was sufficient evidence to support giving the *res ipsa loquitur* instruction, there was sufficient evidence to withstand K–Mart's motion for judgment on the evidence. The trial court is affirmed in its giving of the instruction and in denying K–Mart's motion.

### III.

K–Mart next contends the trial court erred in instructing the jury on future medical expenses. While we recognize that the Gipsons did not specifically request future medical expenses in their arguments to the jury, we nonetheless find no error in giving the instruction. The instruction correctly states the law and was not covered by other instructions given. The record contains evidence that Mrs. Gipson would incur expenses for future medication and for future medical treatment. There was evidence that she had a firm appointment to see a doctor after trial. The evidence supports giving the instruction and we can find no error.

### IV.

K–Mart finally contends the trial court erred in sending to the jury room, pursuant to the jury's request, a copy of the final instructions. The instructions were typewritten and subsequently edited, leaving hand-written additions and blank spaces. K–Mart argues the instructions may have confused the jury and led to undue emphasis on certain portions of the instructions.

At one time, the accepted practice for granting the jury's request to reread the instructions was to do so in open court and not to send the instructions to the jury room. *Cornett v. State* (1982), Ind., 436 N.E.2d 765. That rule has been superseded and it is now permissible to send "cleansed" instructions to the jury room once they have been read in open court. *Mitchell v. State* (1989), Ind., 535 N.E.2d 498. In the present case, Judge Eggers initially read the instructions in open court in the presence of all parties and their attorneys. The instructions sent to the jury room were purged of all extraneous information and did not indicate which party tendered them to the court. The instructions contained both typewritten and neatly handwritten material without any other markings which could have influenced the jury in any manner. We find no error.

The trial court is in all things affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.