Jacqueline L. BALFOUR and Douglas M. Balfour, Appellants,

v.

KIMBERLY HOME HEALTH CARE, INC. d/b/a Olsten Certified Healthcare Corp. a/k/a Olsten Health Services, Inc., Appellee.

No. 49A02–0411–CV–949.

Court of Appeals of Indiana.

July 12, 2005.

**146**

Frederick R. Hovde, Hovde Law Firm, Indianapolis, for Appellants.

Thomas E. Rosta, Kopka, Pinkus, Dolin & Eads, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jacqueline L. Balfour and Douglas M. Balfour appeal from the trial court's grant of summary judgment in favor of Kimberly Home Health Care, Inc. d/b/a Olsten Certified Healthcare Corp. a/k/a Olsten Health Services, Inc. ("Olsten") in this negligence action.[1] The Balfours present two dispositive issues for our review:

1. This action does not fall under the Medical Malpractice Act because Olsten was not a

1. Whether the trial court erred when it concluded that the doctrine of res ipsa loquitur does not apply in this case.

2. Whether the trial court erred when it concluded that there is no genuine issue of material fact precluding summary judgment in favor of Olsten.

We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On March 3, 1999, Jacqueline underwent liposuction surgery on her abdomen. Dr. Kimberly Short performed the surgery. Jacqueline experienced complications following the procedure, including an interruption of blood supply to her abdominal wall. As a result, Dr. Short opened the surgical incision in Jacqueline's abdomen and left it open, but covered with dressings. Thereafter, Olsten provided home health care for Jacqueline, who could not change her dressings herself. Sharon Gilbert, R.N., an Olsten employee, visited Jacqueline and changed her dressing once on March 12, twice a day on March 13 and 14, and once during the morning of March 15. Each dressing required that Jacqueline's open wound be packed with "wet to dry 4x4's." [2] Appellant's App. at 44. Gilbert did not maintain a count of the 4x4's placed and removed during those dressing changes.

During the afternoon on March 15, Jacqueline had an appointment with Dr. Short, who changed Jacqueline's dressing.

That dressing consisted of eighteen 4x4's. On March 16, Gilbert counted the eighteen 4x4's as she removed them, and when she repacked the wound, she used Kerlix gauze instead of 4x4's. Olsten did not treat Jacqueline after March 16, 1999, and none of the subsequent dressing changes involved packing the wound with 4x4's.

Jacqueline continued to have pain in her abdomen, and her wound was not healing properly. Accordingly, on July 22, 1999, Jacqueline underwent a woundoscopy performed by Dr. Michael Elmore. Dr. Elmore found and removed a 4x4 gauze from the base of a "tunnel" in Jacqueline's abdominal wall.[3]

The Balfours filed a complaint against Olsten alleging that its negligence caused Jacqueline to suffer pain and delayed the healing of her abdominal wound.[4] Olsten filed a summary judgment motion asserting that there is no issue of material fact regarding whether its alleged negligence proximately caused Jacqueline's injuries. In particular, Olsten designated evidence showing that Dr. Short examined Jacqueline's wound prior to the July 1999 woundoscopy and did not see any 4x4's in the wound. In their motion in opposition to summary judgment, the Balfours designated portions of Dr. Elmore's deposition, including his statement that the 4x4 that he found in the wound could have been placed in her abdomen at any time following her surgery.

The trial court granted Olsten's summary judgment motion and made the following conclusions:

qualified health care provider at the time of the alleged negligence. *See* Ind.Code § 34-18-3-1.

2. A "4x4" refers to a type and size of gauze used in wound dressings.

3. Dr. Elmore explained that a tunnel is caused when fluid accumulates in a wound and forms a "seroma," which then "burrows" in an attempt to drain out of the body. Appellant's App. at 95.

4. The Balfours have also brought suit against Dr. Short under the Medical Malpractice Act.

1. There is no genuine issue of material fact that after the last care provided by Olsten Health Services, there existed no gauze in the open wound of Ms. Balfour.

2. Plaintiff is unable to meet the element of proximate cause as required under the tenets of negligence law, and Olsten is entitled to judgment as a matter of law.

3. Plaintiff has not shown exclusive control over the injuring instrumentality as required under the doctrine of res ipsa loquitur, and thus the doctrine is inapplicable to the facts of this case.

Appellants' App. at 12. The Balfours filed a motion to correct error, which the trial court denied. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

We note that the trial court entered findings and conclusions in support of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Issue One: Res Ipsa Loquitur

The Balfours contend that the trial court erred when it concluded that the doctrine of res ipsa loquitur is inapplicable to the facts underlying their negligence claim. This court recently explained the doctrine of res ipsa loquitur as follows:

The doctrine literally means "the thing speaks for itself." Res ipsa loquitur is a rule of evidence which *permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury.* The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. To create an inference of negligence, the plaintiff must establish: (1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. In determining if the doctrine is applicable, *the question is whether the incident more probably resulted from defendant's negligence as opposed to another cause.* A plaintiff may rely upon common sense and experience or expert testimony to prove that the incident more probably resulted from negligence. To invoke res ipsa loquitur, the plaintiff must demonstrate that the defendant

had exclusive control of the injuring instrumentality at the time of injury.

*Rector v. Oliver*, 809 N.E.2d 887, 889–90 (Ind.Ct.App.2004), *trans. denied* (citations omitted, emphases added).

 The element of exclusive control is a broad concept which focuses on who has the right or power of control and the opportunity to exercise it, rather than actual physical control. *Gold v. Ishak*, 720 N.E.2d 1175, 1181 (Ind.Ct.App.1999). Exclusive control is satisfied if the defendant had control at the time of the alleged negligence. *Id.* Exclusive control may be shared control if multiple defendants each have a nondelegable duty to use due care. *Id.* In proving the element of exclusive control, the plaintiff is not required to eliminate with certainty all other possible causes and inferences, but must show either that the injury can be traced to a specific instrumentality or cause for which the defendant was responsible, or that the defendant was responsible for all reasonably probable causes to which the accident could be attributed. *Id.* The reason for this is because proof in a res ipsa loquitur case seldom points to a single specific act or omission; typically, it points to several alternative explanations involving negligence without indicating which of them is more probable than the other. *Id.*

 The doctrine of res ipsa loquitur is especially applicable in cases where, as here, a health care provider leaves a foreign object in a patient's body.[5] *See, e.g., Weinberg v. Geary*, 686 N.E.2d 1298, 1302 (Ind.Ct.App.1997) (noting that res ipsa loquitur usually only applies in cases of "obvious" medical malpractice, such as cases involving the failure to remove a foreign object from a patient's body). Expert opinion is not necessary to explain that a 4x4 would not have been left in Jacqueline's wound in the absence of negligence. Nevertheless, the trial court concluded that the doctrine does not apply because it found that the Balfours did not show that Olsten had exclusive control over the injuring instrumentality. We cannot agree.

 The designated evidence shows that Olsten packed Jacqueline's wound with 4x4's on six occasions from March 12 through March 15, 1999.[6] There is no designated evidence showing that 4x4's were used to pack the wound after March 15. Gilbert testified that she did not count the 4x4's when she packed and unpacked the wound, although she acknowledged that "good custom and practice" would dictate maintaining a count at every dressing change. Appellants' App. at 47. The only time Gilbert counted 4x4's during a dressing change was when, on March 16, she removed the eighteen 4x4's that Dr. Short had placed in the wound on March 15.

The evidence is undisputed that the injuring instrumentality in this case was a 4x4 left in Jacqueline's abdomen. While the Balfours cannot pinpoint the exact date of the alleged negligence, the designated evidence shows that the 4x4 was placed in the wound some time between March 12 and March 16, 1999. Accordingly, the 4x4 left in Jacqueline's wound was present on March 16. On that date, Olsten was the only health care provider in charge of her wound care and Gilbert performed a dressing change. It follows that Olsten was in exclusive control of the injuring instrumentality at that time and it was Gilbert's

5. While not a "qualified health care provider" under the Medical Malpractice Act, Gilbert is obviously a health care provider.

6. Olsten suggests that in addition to Gilbert and Dr. Short, other health care providers might have also used 4x4's in treating Jacqueline, but it does not cite to any designated evidence in support of that assertion. As such, that allegation has no bearing on our review.

responsibility to exercise reasonable care in removing all 4x4's from the wound.[7] *See Gold,* 720 N.E.2d at 1181. We conclude that the Balfours have satisfied the exclusive control element and that the doctrine of res ipsa loquitur applies to create an inference of negligence. *See Rector,* 809 N.E.2d at 889.

### Issue Two: Summary Judgment

The Balfours next contend that the trial court erred when it concluded that there is no genuine issue of material fact regarding Olsten's alleged negligence. In particular, the Balfours maintain that the trial court erred when it concluded that "after the last care provided by Olsten Health Services, there existed no gauze in the open wound of Ms. Balfour." Appellant's App. at 12. That conclusion is based upon Dr. Short's testimony that she did not see a 4x4 in the wound after Olsten had stopped administering care to Jacqueline.

The inference created by res ipsa loquitur will defeat a motion for summary judgment even though the defendant presents evidence tending to establish the absence of negligence. *See Schaffner,* 336 S.E.2d at 118. Here, again, in support of its summary judgment motion, Olsten designated as evidence Dr. Short's testimony that she did not see a 4x4 or any tunneling in Jacqueline's wound when she examined it sometime after Olsten's treatment had ceased. But, because the Balfours have met their burden of production through the application of res ipsa loquitur, that evidence only creates a question of fact on the issue of negligence for the trier of fact. *See id.; see also Gold,* 720 N.E.2d at 1182–83 (observing that where a plaintiff has satisfied the elements of res ipsa loquitur,

"even though the defendant comes forward with an explanation of the accident and evidence of his . . . due care, the inference of negligence drawn from the facts does not disappear from the case, but instead remains, and is placed upon the scales to be weighed by the trier of fact along with any and all explanations of the defendant, as well as all of the other evidence."). Indeed, Dr. Elmore testified that given the size of Jacqueline's wound, someone might have "push[ed the 4x4] up probably in any direction, maybe a foot up in [her abdomen]." Appellant's App. at 65. Depending upon how thorough Dr. Short's exam of Jacqueline's wound was, Dr. Elmore's testimony provides a reasonable explanation for why the 4x4 might have been present, but was missed by Dr. Short.

In sum, the designated evidence shows that there exists a genuine issue of material fact regarding Olsten's alleged negligence. While Dr. Short testified that she did not see a 4x4 in Jacqueline's wound after Olsten had stopped treating her, Dr. Elmore testified that the 4x4 could have been left in the wound at any time following the surgery. And a trier-of-fact could reasonably infer from Dr. Elmore's testimony that the 4x4 could have been hidden from Dr. Short's view. The trial court erred when it entered summary judgment in favor of Olsten.

Reversed and remanded for further proceedings.

SULLIVAN, J., and RILEY, J., concur.

---

**7.** The alleged negligence, that is, failing to remove the 4x4 from Jacqueline's wound, might have occurred on more than one occasion while she was under Olsten's care. For instance, Gilbert might have neglected to remove the 4x4 during the very first dressing change on March 12, 1999, and she might have neglected to remove it during every subsequent dressing change. Regardless, because the designated evidence shows that the 4x4 was present on March 16, the element of exclusive control is satisfied.