# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-3248

CHRISTINE MAROULES,

*Plaintiff-Appellant*,

*v.*

JUMBO, INC. and JAMES E. WINDSOR,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2: 03-C-14—**Andrew P. Rodovich,** *Magistrate Judge*.

---

ARGUED SEPTEMBER 20, 2005—DECIDED JUNE 20, 2006

---

Before CUDAHY, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Ordinarily we count on gravity to keep heavy items in place; and so when flour barrels, armchairs, and truck wheels become airborne we assume first that something has gone wrong. Such events, lawyers say, speak for themselves, or in Latin, "res ipsa loquitur," and the blame for any resulting injury can be imputed to the person who had control of the item before it became a dangerous projectile. Christine Maroules asks the court to adopt this view to delegate to the owner of Jumbo, Inc. trucking company and Jumbo's driver, James E. Windsor (together, "Jumbo"), blame for injuries she sustained when a wheel broke free from the truck upon which it was

mounted, flew through the air, and crashed through the front passenger side of her car. Because she has failed to demonstrate the elements necessary for res ipsa loquitur to apply, however, we affirm the decision of the district court granting summary judgment to Jumbo.

**I.**

At the time of the accident on January 4, 2000, Windsor was operating the semi-tractor-trailer in question for his employer, Jumbo Inc., driving westbound through Indiana on Interstate Route 80. Windsor did not realize that the two-wheel unit (tandems), consisting of two tires and two rims attached by studs to a wheel assembly, had detached from his truck until he was stopped by an Indiana State Trooper at the border between Illinois and Indiana. At that point he inspected his truck and determined that five or six of the ten studs upon which the wheel unit was mounted were broken and sheared off, although the thread of the portions of the studs that had remained on the trailer did not appear to be worn. The nuts attaching the wheel unit were also missing, and the four or five studs that remained were broken or sheered off. According to Windsor's affidavit, he had inspected the nuts just a few hours prior to the accident, as part of his routine walk-around inspection which he conducted at the beginning and end of each day and every time he started the vehicle. As part of his inspection he checked the physical condition of the tires, rims, lugs, studs, nuts, and tires' air pressure. He testified that upon his inspection, the studs and nuts were not loose in any way. Philip Simonsen, the president of Jumbo Inc., testified that the trailer, which he purchased as a used vehicle in 1999, had received a full annual inspection in compliance with U.S. Department of Transportation regulations just five weeks before the accident. Simonsen also testified that Jumbo hires a third-party company to

inspect, maintain, and repair its trailers and all of their parts, including the wheel studs, which it had done on numerous occasions prior to the accident. Mr. Windsor testified that the bolts in question can last for several years and "can go until you have a problem," that is until they turn brown or one breaks off, at which point all studs should be replaced as they tend to reach their breaking points at around the same time. (R. at 40, Ex. 2, p. 78). Maroules contends that ordinary care required the defendants to "take notice of the tendency of parts of machinery to decay from age, or wear out by use, and the law requires them to make reasonable inspection of the various parts of machinery from time to time for the purpose of discovering any defective parts, to the end such parts may be replaced or repaired." (Maroules brief at 22). In short, Maroules contends that Jumbo should have replaced the wheel studs periodically and prophylactically instead of waiting for them to break or show other indicia of failure.

## II.

In response to Jumbo's summary judgment claim, Maroules asked the district court to apply the doctrine of res ipsa loquitur.[1] Res ipsa loquitur is a shortcut to a negligence claim. Although negligence may not be inferred from the mere fact that an injury occurred, it may be inferred from the circumstances surrounding the injury. *K-Mart v. Gipson*, 563 N.E.2d 667, 669 (Ind. Ct. App. 1990). The doctrine recognizes that in some situations an occurrence is so unusual that, absent a reasonable justification, the person in control of the situation should be held responsible. *Cergnul v. Heritage Inn, Inc.*, 785 N.E.2d 328, 332

---

[1] In the district court Maroules also made a straight forward negligence claim. Maroules raises only the res ipsa loquitur arguments on appeal.

(Ind. Ct. App. 2003). In other words, as the Latin describes, "the thing speaks for itself." *See Byrne v. Boadle*, 2 H & C 722, 159 Eng. Rep. 299 (1863) (the original res ipsa loquitur case involving a flour barrel falling out of a warehouse window). The central question in any res ipsa loquitur case is whether the incident more probably resulted from the defendant's negligence than from some other cause. *Deuitch v. Fleming*, 746 N.E.2d 993, 999 (Ind. Ct. App. 2001). To establish this inference of negligence, the plaintiff must demonstrate: (1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Balfour v. Kimberly Home Health Care, Inc.*, 830 N.E.2d 145, 148 (Ind. Ct. App. 2005). Under Indiana law, res ipsa loquitur is an evidentiary doctrine that allows an inference of negligence to be drawn under certain factual circumstances. *See Gold v. Ishak*, 720 N.E.2d 1175, 1180 (Ind. Ct. App. 1999). Once the plaintiff has met the burden of demonstrating the control and due care prongs of res ipsa loquitur, the doctrine operates to permit an inference of negligence based upon the circumstantial evidence. *Ross v. Olson*, 825 N.E.2d 890, 894 (Ind. Ct. App. 2005). The inference, however, is just that—a plaintiff does not win her case merely because she has met the res ipsa loquitur requirements. *Rector v. Oliver*, 809 N.E.2d 887, 891 (Ind. Ct. App. 2004), *transfer denied*, 822 N.E.2d 981 (Ind. 2002). A successful res ipsa loquitur showing simply creates an inference which the trier of fact may choose to accept or not. *Id.*

Whether the doctrine of res ipsa loquitur applies in any given negligence case is a mixed question of law and fact. *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005). The question of law is whether the plaintiff's evidence includes all of the underlying elements of res ipsa loquitur. *Id.* at 704. The determination for the trier of fact is whether

the permissible inference is to be drawn. *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 928 (Ind. Ct. App. 1985). A court may enter summary judgment when it is convinced that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Consequently, faced with the defendant's summary judgment motion, the district court's task was to determine whether Maroules had met the underlying requirements of res ipsa loquitur. We review the grant of summary judgment de novo because it presents the purely legal question of whether the underlying elements of res ipsa loquitur exist. *See Smith v. Sheahan*, 189 F.3d 529, 532 (7th Cir. 1999). Jumbo is entitled to a judgment as a matter of law if Maroules cannot make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In this case, it is Maroules' burden to establish that (1) Jumbo had exclusive management and control of the runaway wheel assembly and (2) the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Gipson*, 563 N.E.2d at 669.

The defendants begin by denying that they had exclusive control. To support this proposition, they contend that they had no role in manufacturing the trailer or its wheel studs; they had no control over the inspection and maintenance of the trailer or its wheel studs prior to the time that Jumbo purchased the trailer in 1999; and that Jumbo does not maintain, service, or repair its trailers and their parts, but instead relinquishes control every time it sends its trailers to an outside third party maintenance company to do this work.

Jumbo's argument is appealing on the surface when one contemplates any number of alternative theories for the accident: the stud manufacturer could have negligently or knowingly manufactured defective studs, the mainte-

nance business could have used a faulty power tool to tighten the bolts, or a vandal could have sabotaged the truck wheels. Recall, however, that the doctrine of res ipsa loquitur does not hand victory to the plaintiff; it merely creates an inference of negligence that the trier of fact, upon hearing all of the evidence, may or may not choose to accept. *See Rector,* 809 N.E.2d at 891. Consequently, the concept of control under Indiana's res ipsa loquitur case law is expansive. *Id.* at 890. To prove the "exclusive control" requirement of res ipsa loquitur, the plaintiff simply is required to show either that a specific instrument caused the injury and that the defendant had control over that instrument or that any reasonably probable causes for the injury were under the control of the defendant. *Slease v. Hughbanks*, 684 N.E.2d 496, 499 (Ind. Ct. App. 1997). Indiana case law instructs that a defendant need not be in control of the causative instrumentality at the exact moment of injury, provided the defendant was the last person in control. *Shull*, 477 N.E.2d at 931. Furthermore, the possibility of multiple causes or multiple defendants does not automatically defeat the application of res ipsa loquitur. *Rector*, 809 N.E.2d at 890. It is not necessary for the plaintiff to exclude every other possibility other than the defendant's negligence as a cause of the injury. *Id.* at 891; *Gipson*, 563 N.E.2d at 671. In other words, the possibility that a third party may have negligently manufactured, installed, or maintained the studs does not preclude a finding that Jumbo had control over the injuring instrumentality. In fact, a plaintiff may point to several alternative causes of injury and allow the jury to determine which, if any, instrumentality caused the injury. *Slease*, 684 N.E.2d at 499. As the Indiana Appellate court explained, "[a]ll inferences from the evidence, including those arising from the *res ipsa* doctrine, are to be placed in the scales to be weighed by the trier of fact." *Gipson*, 563 N.E.2d at 671. If the plaintiff cannot, however, identify any potential causes and show that they were in the exclusive control of

the defendant, the res ipsa loquitur claim must fail. *Slease*, 684 N.E.2d at 499. Maroules has identified at least one potential cause of her injury in the control of the defendants—the failure to take notice that the studs might decay and to replace them before they do. We agree with the district court, therefore, that Maroules has demonstrated the element of exclusive control as defined expansively under Indiana law.

Maroules however, must also demonstrate that the accident is of the type that does not ordinally happen if those who have the management and control exercise proper care. Finding that Maroules had failed this second res ipsa loquitur requirement, the district court concluded that, "[u]nlike the numerous cases cited by the plaintiff, there is no evidence in this case that the defendants' conduct fell below the standard of care that the law imposes on the drivers or owners of tractor-trailers." (R. at 46, p. 13). Maroules objects to the district court's statement that "the plaintiff has not come forth with any circumstantial evidence from which a reasonable jury could find that the defendants failed to exercise reasonable care." (R. at 46, p. 12). It is unclear to which requirement Maroules objects. It is true that the doctrine of res ipsa loquitur does not require a plaintiff to submit evidence of causation. *Gipson*, 563 N.E.2d at 671. After all, res ipsa loquitur is a doctrine of common sense. It allows a trier of fact to draw an inference of negligence when evidence of causation is lacking. *Id.* at 671. We do not, however, interpret the district court's language as demanding anything more than the usual requirements for the application of res ipsa loquitur. To invoke the doctrine a plaintiff must "present evidence that . . . the accident is one which in the ordinary course of things does not happen if those who control the instrumentality use proper care." *Cergnul*, 785 N.E.2d at 331. And although a plaintiff may rely upon common sense and experience or expert testimony, the plaintiff still has the

burden of showing that the injury was one that would not ordinarily occur in the absence of proper care on the part of those controlling the instrumentality. *Ross*, 825 N.E.2d at 894.

Although res ipsa loquitur is a doctrine of common sense, expert testimony is required when the issue of care is beyond the realm of the layperson, that is, where a fact-finder cannot determine whether a defendant's conduct fell below the applicable standard of care without technical input from an expert witness. *Syfu*, 826 N.E.2d at 704-05. The *Shull* court cited Prosser for the proposition that:

> [i]n the usual [res ipsa] case the basis of past experience from which the conclusion may be drawn that such events usually do not occur without negligence, is one common to the whole community, upon which the jury are simply permitted to rely. Even where such a basis of common knowledge is lacking, however, expert testimony may provide a sufficient foundation.

*Shull*, 477 N.E.2d at 927 (citing Prosser, Handbook of the Law of Torts, § 39, P.215 (4th Ed. 1971)). Although the need for expert testimony generally arises in cases involving medical malpractice where the issues surrounding diagnosis and treatment are complex, the notion that a plaintiff may establish the second prong of res ipsa loquitur—the "proper care" prong—by using either common knowledge or expert testimony applies to cases outside of the medical malpractice realm as well. *See, e.g.*, *Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 581 (7th Cir. 1994); *Shambaugh & Son v. Carlisle*, 730 N.E.2d 796, 798 (Ind. Ct. App. 2000), *vacated on other grounds*, 763 N.E.2d 459 (Ind. 2002); *Shull*, 477 N.E.2d at 929. This case presents questions that simply cannot be determined by a fact-finder without some understanding of the standard of proper or reasonable care in the industry. *See Syfu*, 826 N.E.2d at 705; *Shull*, 477 N.E.2d at 927. After all, Jumbo claims that the proper care

of wheel assembly studs involves regular visual inspection and replacement only when any stud on the wheel shows signs of wear or breakage. (R. at 40, Ex. 2, p. 78). Maroules claims, instead, that the standard of care requires that truck owners and operators "take notice of the tendency of parts of machinery to decay from age, or wear out by use, . . . make reasonable inspection [and] . . . change[ ] the wheel studs periodically instead of waiting for one of them to break." (Appellant Br. at 22). Only expert testimony, and not our own common sense, can tell us which is correct. Furthermore, only an expert could tell us whether this is the type of accident that might happen even if those who have management and control of trucks and their wheel assemblies exercise the kind of care Maroules proposes. In other words, it is possible that this type of accident happens randomly even when truck drivers and owners periodically inspect their wheel assemblies and change the wheel studs prophylactically as Maroules argues they should. Our past experience and common knowledge is not sufficient to answer these questions. Consequently, we conclude that Maroules has failed to show by common sense or expert testimony that the injury was one that would not ordinarily occur in the absence of proper care on the part of those controlling the instrumentality. *Syfu,* 826 N.E.2d at 705.

On a final note, much ado has been made in this case about the intersection of Indiana's res ipsa loquitur law and the federal procedural rules for summary judgment. At oral argument, Maroules' attorney stated that he did not think it appropriate for federal summary judgment procedure to upset Indiana state law concerning res ipsa loquitur. Although state law provides the substantive law in a diversity action, summary judgment procedure is governed by federal law. *Jean v. Dugan*, 20 F.3d 255, 262-63 (7th Cir. 1994), *Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994). Federal law defines the standard for evaluating the sufficiency of the evidence. *Mayer*, 29 F.3d at

335. If reasonable persons could not find that the evidence justifies a decision for a party on each essential element, the court can grant summary judgment using federal standards. *Id.* Federal courts may therefore grant summary judgment under Rule 56 upon concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury. *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990).

In any event, we do not think this case presents a conflict between federal and state law. As Maroules argues, "[o]nce the plaintiff presents evidence to bring herself within the operation of res ipsa loquitur, the inference of negligence is to be weighed by a jury and summary judgment is not proper." (Maroules Reply Br. at 8). As explained above, however, Maroules, has not presented sufficient evidence to bring herself within the operation of the res ipsa loquitur doctrine. Consequently, summary judgment must be granted for Jumbo, and the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—6-20-06