

**FILED**

Dec 27 2023, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy F. Devereux
Wagner Reese, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Angela J. Della Rocco
Amy K. Fisher
McCarter & English, LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kiera Isgrig,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Trustees of Indiana University,<br><br>*Appellees-Defendants.* | December 27, 2023<br><br>Court of Appeals Case No.<br>23A-CT-1332<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Geoffrey J. Bradley, Judge<br><br>Trial Court Cause No.<br>53C01-2004-CT-723 |

**Opinion by Judge Tavitas**
Judges Pyle and Foley concur.

**Tavitas, Judge.**

## Case Summary

Kiera Isgrig was studying in a building at Indiana University Bloomington when a window fell out of the wall, striking and injuring her. Isgrig filed a

negligence claim against Indiana University and the Trustees of Indiana University (collectively "the University")[1] based on the theory of *res ipsa loquitur*. The University moved for summary judgment, which the trial court granted. Isgrig appeals and argues that the trial court erred by concluding as a matter of law that the doctrine of res ipsa loquitur is inapplicable to the facts here. We agree and, accordingly, reverse and remand.

## Issues

Isgrig presents one issue for our review, which we restate as whether the trial court improperly granted summary judgment in favor of the University based on its conclusion that the doctrine of *res ipsa loquitur* was inapplicable to Isgrig's negligence claim.

## Facts

The facts here are relatively undisputed. On April 28, 2018, Isgrig was a student at the University and studying for final exams with her friends in Room 138 of Francis Morgan Swain Hall ("Swain Hall")—a building on the Bloomington campus. Isgrig sat at a table with her friends with her back to the wall. Mounted in the wall was an exterior window. As Isgrig sat with her

---

[1] Isgrig's complaint named both Indiana University and the Trustees of Indiana University as defendants. The trial court subsequently granted the defendants' motion to dismiss Indiana University as a defendant. *See* Ind. Code § 21-27-4-2 (providing that the Board of Trustees of Indiana University may sue and be sued); *see also Clemons v. Trustees of Indiana Univ.*, 2020 WL 2039752, at *1 n.1 (S.D. Ind. Apr. 28, 2020) (noting that, although defendant named "Indianapolis [sic] University Law School" as a defendant, the proper suable entity was the "Trustees of Indiana University."). Thus, only the Trustees of Indiana University remain as defendants.

friends, the window fell out of the wall and landed on Isgrig's head. The glass in the window shattered, leaving glass shards over Isgrig and the table at which she was sitting. No one in Isgrig's group of friends tampered with the window before it fell. Isgrig's friends pulled the heavy window off Isgrig, and Isgrig went to the restroom to attempt to clean herself off. Isgrig's friends, however, soon drove her to the emergency room.

[4] The window, after it had fallen, and the area in which Isgrig had been sitting were captured in the following photo:



Appellant's App. Vol. II p. 99.

[5] After the window fell, Kevin Ashley, a carpenter employed by the University, was dispatched to the room. Ashley noted that the window had a metal frame

with adjustable blinds between two glass panes. When in its casing, the bottom panel of the window could be raised vertically to partially open the window. Ashley noted that two of the window's four sash springs were broken, but he also later explained that broken sash springs should not cause a window to fall out of its casing with no warning. Ashley found no other damage to the window that would explain why it came out of its casing, absent human involvement at some point previously.

[6] Further investigation revealed that the University conducted only reactive maintenance on its windows and did not perform any preventive maintenance. That is, windows are not serviced unless a work order regarding a problem with the window was submitted. The last time the University had repaired the window in question was in March 2017 in response to a work order stating that the blinds would not raise. Repairing the blinds would have required the maintenance staff to remove the window from its casing, at which time any other faults, such as broken sash springs, would have been repaired.

[7] On April 23, 2020, Isgrig filed a complaint against the University alleging negligence and relying on the doctrine of *res ipsa loquitur*. The University filed its answer on May 20, 2020. On June 27, 2022, the University moved for summary judgment along with its designated evidence in support of its motion. The University argued that it had neither actual nor constructive knowledge regarding any issue with the window, that the doctrine of *res ipsa loquitur* did not relieve Isgrig of proving that the University had either actual or constructive knowledge of an issue with the window, and that the University did not have

exclusive control of the window, thereby rendering *res ipsa loquitur* inapplicable. After successfully seeking an extension of time, Isgrig filed a reply to the University's motion for summary judgment on January 19, 2023, along with her designated evidence in opposition to summary judgment. Isgrig argued that the window was under the exclusive control or management of the University and that, under the facts of this case, *res ipsa loquitur* allows an inference of negligence on the part of the University.

[8] The trial court held a summary judgment hearing on April 14, 2023, and, on May 24, 2023, entered an order granting the University's motion for summary judgment. Isgrig now appeals.

## Discussion and Decision

[9] On appeal, Isgrig argues that the trial court erred by granting summary judgment in favor of the University because the doctrine of *res ipsa loquitur* applies to fixtures in premises liability cases and that, given the broad definition of "exclusive control," there is at least a genuine issue of material fact as to whether the window was under the exclusive control and management of the University at the time it fell on Isgrig. The University responds that the trial court properly granted summary judgment in its favor because: (1) Isgrig cannot make a prima facie case of negligence under a premises liability standard, (2) *res ipsa loquitur* cannot apply if a plaintiff cannot also establish the elements of premises liability, and (3) *res ipsa loquitur* is inapplicable under the facts of the present case.

## A. Standard of Review

When this Court reviews a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court. *Serbon v. City of E. Chicago*, 194 N.E.3d 84, 91 (Ind. Ct. App. 2022) (citing *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1098 (Ind. Ct. App. 2021)). "Summary judgment is appropriate only 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting *Minser*, 170 N.E.3d at 1098; citing Ind. Trial Rule 56(C)). The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. (citing *Minser*, 170 N.E.3d at 1098). Only if the moving party meets this prima facie burden does the burden then shift to the nonmoving party to show the existence of a genuine issue of material fact. *Id*. (citing *Minser*, 170 N.E.3d at 1098).

## B. Premises Liability and Res Ipsa Loquitur

In general, to prevail on a claim of negligence, the plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by the defendant's breach of duty. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Isgrig seeks to demonstrate a genuine issue of material fact by applying the doctrine of *res ipsa loquitur* to provide an inference that the University breached its duty and was negligent. The University, however, argues that *res ipsa loquitur* is inapplicable

unless a plaintiff also establishes that a defendant would be liable under a theory of premises liability. Accordingly, we must analyze the intersection of the doctrines of *res ipsa loquitur* and premises liability.

### 1. Premises Liability

In *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), our Supreme Court adopted the following language from the Restatement (Second) of Torts regarding the liability of a premises owner when an invitee is injured by a condition on the premises owner's property:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

*Id*. at 639-40 (quoting Restatement (Second) of Torts § 343 (1965)).

### 2. Res Ipsa Loquitur

As for the doctrine of *res ipsa loquitur*, our Supreme Court has summarized the law as follows:

> Res ipsa loquitur is translated from Latin as "the thing speaks for itself." The doctrine of *res ipsa loquitur* recognizes that in some

situations, an occurrence is so unusual, that absent reasonable justification, the person in control of the situation should be held responsible. The central question in *res ipsa loquitur* cases is whether the incident probably resulted from the defendant's negligence rather than from some other cause. To establish this inference of negligence, a plaintiff must demonstrate: (1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) the accident is of the type that ordinarily does not happen if those who have management or control exercise proper care. Whether the doctrine of *res ipsa loquitur* applies in any given negligence case is a mixed question of law and fact.

*Griffin v. Menard, Inc.*, 175 N.E.3d 811, 814-15 (Ind. 2021) (citations omitted).

[14] "The exclusive control requirement of the *res ipsa loquitur* doctrine requires that the plaintiff demonstrate that the defendant had exclusive control over the instrumentality *at the time* of the alleged negligent act." *Rector v. Oliver*, 809 N.E.2d 887, 892 (Ind. Ct. App. 2004) (citing *Deming Hotel Co. v. Prox*, 142 Ind. App. 603, 235 N.E.2d 613 (1968)); *see also Whetstine v. Menard, Inc.*, 161 N.E.3d 1274, 1284 (Ind. Ct. App. 2020) ("To invoke *res ipsa loquitur*, the plaintiff must demonstrate that the defendant had exclusive control of the injuring instrumentality at the time of injury."), *trans. denied*. Moreover, "[e]xclusive control is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it." *Whetstine*, 161 N.E.3d at 1284 (citing *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 926 (Ind. Ct. App. 1985), *trans. denied*).

The ultimate determination of whether *res ipsa loquitur* applies in any given negligence case is a mixed question of law and fact, but the question of whether the plaintiff's evidence includes all the elements of *res ipsa loquitur* is a question of law. *St. Mary's Ohio Valley Heart Care, LLC v. Smith*, 112 N.E.3d 1144, 1150 (Ind. Ct. App. 2018) (citing *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005)). Thus, if a plaintiff fails to present evidence that could establish one element (or more than one element) of *res ipsa loquitur*, then application of the doctrine fails as a matter of law. *See id.*

### 3. Applicability of Res Ipsa Loquitur in Premises Liability Cases

Isgrig contends that she designated evidence sufficient to permit her to proceed to trial on a theory of *res ipsa loquitur*, i.e., that the window was under the exclusive control or management of the University and that windows do not ordinarily fall out of walls if those who have management or control have exercised proper care. Citing our Supreme Court's opinion in *Griffin*, the University argues that Isgrig cannot succeed under a theory of *res ipsa loquitur* unless Isgrig can first establish that the University is liable under a theory of premises liability. To address the parties' arguments requires us to review several cases that have addressed the applicability of the doctrine of *res ipsa loquitur* in which the plaintiff was on the premises as an invitee of the defendant.

In *Cergnul v. Heritage Inn of Ind., Inc.*, 785 N.E.2d 328 (Ind. Ct. App. 2003), *trans. denied*, the plaintiff fell and was injured when a handrail came out of the wall at the hotel in which she was staying. The plaintiff sued the hotel and sought a jury instruction on *res ipsa loquitur*, but the trial court granted judgment on the

evidence in favor of the hotel. On appeal, this Court affirmed, concluding that, even if the hotel was in exclusive control of the handrail, there were reasons other than negligence that the handrail could have come lose, such as vandalization by another patron. *Id*. at 330. Accordingly, we affirmed the trial court. *Id*.

[18] Two years later, another panel of this Court addressed a slightly different situation. In *Rector v. Oliver*, 809 N.E.2d 887 (Ind. Ct. App. 2004), *trans. denied*, the plaintiff was injured when a light fixture fell from the ceiling in a video store. On appeal from the grant of summary judgment to the defendant, we held that there was evidence that the defendant was in exclusive control of the light at the time of the injury: "[t]he negligent act could have been the installation of the light fixture, but the jury could also reasonably infer that the negligence was the failure to reasonably inspect and maintain the premises." 809 N.E.2d at 892. We also could not find as a matter of law that the defect in the light could not have been discovered by reasonable maintenance and inspection. *Id*. at 895.

[19] Although the defendant in *Rector* claimed that the negligent act was the installation of the light fixture, we emphasized that the plaintiff was not required to prove that the defendant had installed the light fixture, stating:

> [I]t is not necessary for a plaintiff to exclude every other
> possibility other than the defendant's negligence as a cause. Nor
> is it required that the plaintiff present direct evidence of the cause
> of the accident, for this . . . begs the question. The doctrine of *res*

*ipsa loquitur* allows an inference of negligence to be drawn when direct evidence is lacking.

*Id*. at 891 (citing *K-Mart Corp. v. Gibson*, 563 N.E.2d 667, 671 (Ind. Ct. App. 1990), *trans. denied*).  Under the facts of that case, the *Rector* Court held that there was a genuine issue of material fact as to whether the negligent act was the installation of the light fixture or the failure to reasonably inspect and maintain the premises: "[r]egardless of who installed the light fixture, we cannot say that a light fixture falling from the ceiling of a business is the sort of event which ordinarily happens if those who have the management and control exercise proper care."  *Id*. at 892.  Thus, it was for the trier of fact to determine whether *res ipsa loquitur* applied.  *Id*.  Ultimately, we reversed the grant of summary judgment in favor of the defendant and remanded for trial.  *Id*. at 895.

[20]    Several years after *Rector*, our Supreme Court addressed the applicability of *res ipsa loquitur* in premises liability cases.  In *Griffin*, the plaintiff was injured when he removed a box containing a sink from a store shelf and the bottom of the box collapsed, causing the sink to fall out and strike the plaintiff.  On appeal from the trial court's grant of summary judgment in favor of the defendant store, our Supreme Court first concluded that the plaintiff had not successfully rebutted the defendant's prima facie showing that the defendant was not liable under a theory of premises liability.  175 N.E.3d at 813-14.  Specifically, the Court held that the plaintiff had not rebutted the defendant's showing that the defendant had no actual or constructive knowledge that the box was defective.  *Id*. at 814.

[21] The Court then addressed the plaintiff's claim that he could proceed on a theory of *res ipsa loquitur*. *Id*. at 814-15. The *Griffin* Court noted that the *Rector* Court had "called into question the application of the doctrine of *res ipsa loquitur* in a premises liability action." *Griffin*, 175 N.E.3d at 815 (citing *Rector*, 809 N.E.2d at 895). In *Rector*, we had noted:

> [T]he position adopted from the Restatement (Second) of Torts in *Burrell, supra*, states that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, the conditions listed therein are met. To say that a premises owner may be liable under the doctrine of *res ipsa loquitur* when they could not be liable under the premises liability standard would seem to fly in the face of the standard adopted in *Burrell*.

809 N.E.2d at 895 (quoted in *Griffin*, 175 N.E.3d at 815).

[22] Our Supreme Court held that, although *Rector* did not "completely forclose[] the application of *res ipsa* to a premises liability action," *Rector* made clear that "if there's no liability under a premises liability standard, *res ipsa* cannot apply." *Griffin*, 175 N.E.3d at 815 (citing *Rector*, 809 N.E.2d at 895).[2] "As such, determining the *res ipsa* issue is necessarily dependent on whether a defendant can be liable under premises liability in the first place." *Id*. Accordingly, the

---

[2] We believe this reads too much into our opinion in *Rector*. In *Rector*, we did not suggest that the doctrines of *res ipsa loquitur* and premises liability were incompatible; rather, we held that, despite any seeming conflicts, the two doctrines could be harmonized. Indeed, we ultimately held that the trial court improperly granted summary judgment because the jury could find that the defendant was negligent based on the doctrine of *res ipsa loquitur* and that this did not conflict with premises liability principles. 809 N.E.2d at 895-96.

*Griffin* Court held that the plaintiff's *res ipsa loquitur* claim did not preclude summary judgment for the defendant. *Id*.

[23] Even if *res ipsa loquitur* could apply in that case, the *Griffin* Court held that the plaintiffs did not show that the injuring instrumentality was within the exclusive management and control of the defendant because the store's customers had access to the sink box. *Id*. Thus, the Court held that "it seems like speculation that the only way the sink could have fallen out of the box was because Menard was negligent when the box could have been handled/tampered with by another customer." *Id*. at 816. In so holding, the Court noted that "the showing of exclusive control is difficult when the injuring instrumentality is accessible to customers. It's also a high bar to show that an occurrence is 'so unusual' that it would not ordinarily happen in the absence of someone's negligence." *Id.* (citing *Johnson v. Blue Chip Casino, LLC*, 110 N.E.3d 375, 378 (Ind. Ct. App. 2018), *trans. denied*).

[24] Although this might seem to sound the death knell for the application of *res ipsa loquitur* in premises liability cases, the *Griffin* Court noted that *res ipsa loquitur* might still apply under some circumstances, writing:

> [W]e decline to hold that *res ipsa* can never apply to a premises liability case. If an injury results from a **fixture** or other component that customers did not or could not disturb—such as a chandelier suspended from the ceiling, or a set of shelves bolted to the wall—and the incident would not normally occur absent negligence, *res ipsa* could be appropriate.

*Id.* (emphasis added).

To be sure, *Griffin* could be read to hold, as argued by the University, that a plaintiff in a premises liability case must first establish all the elements of premises liability before *res ipsa loquitur* can apply. *See* 175 N.E.3d at 815. But to adopt such a strict reading seems, to us, illogical. Indeed, if a plaintiff can establish the elements of premises liability, there would simply be no need to also establish the elements of *res ipsa loquitur*. Instead, we read *Griffin*, as a whole, to instruct that *res ipsa loquitur* can apply in a premises liability case, but only if the injury "results from a fixture or other component that customers did not or could not disturb—such as a chandelier suspended from the ceiling, or a set of shelves bolted to the wall—and the incident would not normally occur absent negligence."[3] *Id.* at 816.

### C. Isgrig May Proceed on a Theory of Res Ipsa Loquitur

*Griffin* narrowed the applicability of the doctrine of *res ipsa loquitur* in premises liability cases to situations where the injury results from a "fixture or other component that customers did not or could not disturb[.]" 175 N.E.3d at 816. Thus, the question becomes whether the falling window is more like the falling

---

[3] This conclusion/reading does not conflict with the premises liability doctrine as adopted in *Burrell*. If a trier of fact finds the defendant liable under a theory of *res ipsa loquitur*, it would follow that the defendant would also be liable under a theory of premises liability, i.e., that the defendant knew or should have known about the condition on the premises and realized that it involved an unreasonable risk of harm to invitees, that the defendant should have expected that the invitee will not discover or realize the danger or would fail to protect themselves against it, and that the defendant failed to exercise reasonable care to protect the invitee against the danger.

ceiling light in *Rector* or more like the falling handrail in *Cergnul* and the sink box in *Griffin*. Based on the designated evidence, we conclude that the falling window is more like the falling ceiling light. Indeed, like the light in *Rector*, the window was a fixture of the building. As for whether the window could have been "disturbed" by others, there was evidence that the University exercised exclusive control and management over the window at the time it fell out of the wall. *See Whetstine*, 161 N.E.3d at 1284. The University had the right or power to control the window. *See id*.

[27] We also cannot say that a window suddenly falling out of a wall—with no one interacting with it—is the sort of thing that can occur absent negligence. We acknowledge that the window was in a position such that others could access it by raising and lowering the windowpanes or the internal window blinds. But a trier of fact could reasonably conclude that this should not cause a window to fall out of a wall absent negligence.

[28] Accordingly, we conclude that the designated evidence, including the fact that the University performed no preventive maintenance on the windows, creates a genuine issue of material fact regarding whether the University can be liable for the injuries caused by the window inexplicably falling from the wall and hitting Isgrig. *See* 62 Am. Jur. 2d Premises Liability § 60 (Oct 2023 Update) (noting that *res ipsa loquitur* "doctrine has also been held applicable when a trapdoor gave way, a door came off its hinge, and in cases involving injuries that were caused by overhead doors, elevator doors, sliding doors, **or glass falling from**

**doors or windows**) (emphasis added) (footnotes omitted). The trial court, thus, erred by granting summary judgment to the University.

## Conclusion

[29] We conclude that the trial court erred by granting the University's motion for summary judgment. Accordingly, we reverse the trial court's grant of summary judgment in favor of the University and remand for proceedings consistent with this opinion.

[30] Reversed and remanded.

Pyle, J., and Foley, J., concur.